## No. 1,151.

### HEIRS OF BURNEY VS. JOHN T. LUDELING ET AL.

1. That is not a consent decree which is rendered by the court on its own motion. Chaffe vs. Hayner, 31 Ann. 594; Wooten vs. LeBlanc, 32 Ann. 692.
2. It is not a good objection for a defendant to urge against a suit by an heir for the recovery of an interest in the property thereof that his ancestor's succession has not been fully administered.
3. Nor is it a good objection for him to urge that *all* the heirs have not been joined.
4. In such a suit, previous tender is not a condition precedent to its institution. All that equity requires is that defendant be permitted to set up his demands in reconvention.
5. All of the parties to a sale are necessary parties to a suit to annul it.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*C. J. & J. S. Boatner* and *Stone & Murphy* for Plaintiffs and Appellants.

*Ludeling & Stillman* and *Stubbs & Russell* for Defendants and Appellees.

### I.

### ON MOTION TO DISMISS.

The opinion of the Court was delivered by

WATKINS, J. The defendants request that the plaintiffs' appeal be dismissed on the ground "that the judgment appealed from was rendered at the request and with the consent of the plaintiffs," and as justifying it, they cite us to an entry that appears in the minutes of the lower court.

It is as follows, viz: " *On motion of plaintiffs' counsel* the judgment heretofore rendered, dismissing this suit, is set aside, and the *court now renders a judgment* dismissing the suit. *See decree.*"

The decree referred to is in the following form, viz.: " In this cause *it is ordered* that the judgment rendered sustaining the exceptions filed by defendants, with leave to amend, is set aside, and *it is now ordered, adjudged and decreed* that said exceptions be sustained, and plaintiffs' suit dismissed at their cost."

This judgment bears the *same date* as that of the entry on the minutes quoted. At the same time the appeal was granted in open court.

These facts, taken chronologically, clearly indicate that, while it was upon the motion of plaintiffs' counsel that the judgment first rendered

was set aside, it was upon the *order of the court* that the suit was dismissed. Wootan vs. Leblanc, 32 Ann. 692; Chaffe vs. Hayner, 31 Ann. 594.

The motion is denied.

## II.

### ON THE MERITS

On the 18th of December, 1885, this suit was filed. The recitals of the petition necessary to be noticed at this stage of the proceedings are the following, viz.:

Anna and Missouri Burney, assisted by their husbands, show that they are heirs at law of R. W. Burney and Fredonia Burney, who died in the parish of Madison in 1866, and who left, in addition to themselves, as their surviving heirs, Tilly M., Matilda, Amelia, and Mary Burney, the last of whom died in 1878 without issue, Amelia having left minor children at her death, there being six heirs in all.

Their mother was qualified and confirmed as natural tutrix for her minor children, and E. B. Towne was qualified as under-tutor; and in that capacity the surviving widow undertook the administration of the succession of her deceased husband, the whole of the property being community, and which consisted of lands embraced in Section 18, T. 14, R. 15, and Sections 17, 18, 27 and 28 in T. 15, R. 14, = 2,200 acres, and 120 acres in Section 32, same township and range. Also *fractional* sections 11, 14 and 15, T. 16, R. 15 = 1,092.49 acres, the whole of which lands being worth, at the date of their father's death, the sum of $45,-242 50, for the entire interest.

Soon after the death of their mother, E. B. Towne, under-tutor, provoked the convocation of a family meeting to recommend the appointment of another tutor; but that said meeting, when assembled, advised that no tutor be appointed, but suggested the appointment of an administrator, in stead; and that he be authorized to accept a proposition, which had been made by John J. Garrard, to receive in payment of a claim he preferred against their father's estate, a sufficient part of the plantation known as the Burney (old) Home place, at a fair valuation, to liquidate said account.

E. B. Towne became the adjudicatee, at sheriff's sale, made on the 6th of October, 1866, under a writ of seizure and sale, in certain executory proceedings entitled Frank O. Woodman vs. James Tickel, executor of O. O. Woodman, of Sections 11 and 15, being a part of the property above described, and situated nearly opposite the city of Vicksburg, Miss., at the eastern terminus of what was then known as the North Louisiana and Texas railway, for the ostensible price of $1,000.

E. B. Towne qualified as administrator on the 19th of December, 1866, and furnished bond, predicated upon the inventory Mrs. Burney had previously taken.

On the 20th of February, 1867, E. B. Towne, as administrator of the estate of R. W. Burney, transferred to James J. Garrard, by an act under private signature, an undivided *half interest* in Sections 11 and 15, T. 16, R. 15, equal to about 364 as., for a price of about $50 per acre, and aggregating $18,200, consisting in "a giving in payment to the extent of any indebtedness due said Garrard, either individually, or as the member of any firm, by R. W. Burney, or his estate, and the balance of said purchase price at said rate, to be paid to said Towne within twelve months from that date."

On the 25th of November, 1868, J. J. Garrard conveyed his interest to Mrs. L. V. S. Ames.

In the year 1868, E. B. Towne caused a survey to be made of Sections 11, 14 and 15, T. 16, R. 15, and the same to be laid off into town lots, with streets and squares.

On the 1st of May, 1869, in consideration of $1,000 and the promise to establish a railway terminus thereon, E. B. Towne conveyed to John T. Ludeling his one-half interest in the railroad square; the town lots designated by odd numbers; the right of way through Section 15; the undivided portion of Section 15 not laid off into town lots and squares, and, referring to same as being the land acquired by him at sheriff's sale under the executory proceedings named, and said sale by Towne to Ludeling was made in pursuance of an agreement previously entered into between them and Mrs. L. V. S. Ames.

On the 13th of May, 1869, E. B. Towne, in his capacity of administrator of the estate of R. W. Burney, presented a petition to the probate court, representing that "the succession was embarrassed with debt, which it was impossible to pay without a sale of real estate. That J. J. Garrard & Co., claiming to be large creditors of the estate, for a sum of over $20,000, had submitted a proposition to the representative of the estate, offering to take land from the estate in payment, at a fair price.

"That a family meeting called to consult upon the interest of the *minor children* of said R. W. Burney, advised the acceptance of the proposition; and the proceedings of said family meeting had been duly homologated on the 30th of November, 1866." Petitioner suggested and recommended the sale of Sections 11, 14 and 15 in T. 16, R. 15, to pay said debt, and prayed for and obtained an order for the sale accordingly, same having been signed by the district judge; said E. B. Towne, acting as the parish judge, at the time, having recused himself; and, under

this order, a writ of sale issued under which said property was adver-
tised and sold on the 24th of June, 1869, and adjudicated to John T.
Ludeling for the ostensible sum of $18,054 60, and a *proces verbal* of sale
was executed and recorded.

"In so far as it was alleged in said petition that there was necessity for
the sale of property to pay debts, and that the proceeding was sanc-
tioned by a family meeting, same was false and fraudulent; because the
object of same was to cover patent and radical nullities existing in the
titles, by which the said Ludeling and others held, and claimed to own
the said property; and in order to carry out a previous agreement in
reference to the acquisition of same, and the division thereof; and that,
if same had been sold upon its merits, it would have realized four times
in actual cash the amounts pretended to have been paid, and said pro-
ceedings and sale were a fraud upon the law, and the prostitution of the
forms of law, to carry out an illegal agreement," etc.

On the 9th of November, 1870, John T, Ludeling caused to be filed in
the recorder's office in Madison parish a map, showing the part of
the land that had been laid off in lots and squares, and in which
he called same the town of Delta, and designated the interests therein
of himself and associates, as well as the interest of E. B. Towne and
Mrs. L. V. S. Ames.

In an act executed by John T. Ludeling before the recorder of Madison
parish, he declared that the following named persons are his associates,
and interested with himself in said properties, viz: Wm. R. Gordon,
Frank P. Stubbs, John W. Klein, George C. Waddell, John Ray, W. J.
Q. Baker, Oaks Ames, Joseph F. McGuire and Henry M. Bry, who
joined said Ludeling in said act, and in which act was declared the
respective shares, or interests of each in the whole of said property,
and which are in the possession of said persons respectively — a tabular
statement of which is annexed.

It is charged that "said pretended succession sale was made for the
purpose of consummating the previously formed agreement, whereby
the aforesaid parties divided petitioner's property among themselves,"
E. B. Towne claiming one-fourth, Mrs. L. V. S. Ames one-fourth, and
Ludeling and his associates one-half, "without any consideration what-
ever."

Said parties have sold portions of said property and received therefor
$49,822 72, besides large donations therefrom to the N. L. & T. R. R.
Co., worth $10,000 in addition.

"Now your petitioners show that all the aforesaid transactions were
the attempted consummation of a fraudulent scheme, devised by said

E. B. Towne, the said J. J. Garrard and his assigns, and the said John T. Ludeling and his associates  *  *  to acquire the aforesaid valuable property of the estate of R. W. Bruney and Mrs. Fredonia Bruney, without paying any price therefor."

Under suitable allegations each and every one of the various sales, alienations and judicial proceedings are charged to have been illegal, without price, or consideration, and absolutely null, and the parties bound *in solido* as co-tresspassers "*for the restitution of the proceeds thus received* by each one of them, with five per cent per annum interest from the date of the *respective sales and donations,* as shown by the abstract of sales filed herewith."

F. P. Stubbs, John T. Ludeling, Mrs. Kate E. Gordon, administratrix of the estate of W. R. Gordon, deceased, and F. P. Stubbs, administrator of the succession of Henry M. Bry, deceased, were alone cited by the *two* plaintiffs who claim *two undivided fifths of the sums of money received, and of the lands remaining unsold,* and their prayer conforms thereto.

Without pleading to the merits, the defendants, Katie E. Whitted, *née* Gordon, and John T. Ludeling, filed exceptions *in limine,* in substance as follows, viz :

1. That all the necessary parties have not been cited, viz: The parties to the various sales, and proceedings attacked, enumerating them; and that they are indispensable parties to the suit.

2. That the demands of plaintiffs' petition are inconsistent —they sue to have the several sales and acts declared null and void, and also for a part of the price thereof; and they require plaintiffs to elect which demand they will pursue.

3. That the petition shows that there was an open and incompleted administration of the estate of R. W. Burney, and that there were debts against the said succession and it is unaccepted by them.

That no tender or offer to return the price of sales has been made.

They pray that suit be dismissed.

F. P. Stubbs, individually, and as administrator of the succession of of H. M. Bry, likewise excepts on the following grounds:

1. That plaintiffs are without any right or authority to sue or stand in judgment, they claiming as part of the heirs of R. W. Burney, without alleging that the succession is closed, or that they have unconditionally accepted his succession; and there has been no settlement, and plaintiffs' interest is not yet ascertainable, and their action is premature.

2. That as a condition precedent to their right to bring this suit a tender of the amount of $18,000, paid by Ludeling at succession sale should have been made.

Third and fourth exceptions are quite similar to exceptions 1 and 2, urged by the other defendants.

## II.

For the purposes of this trial, these exceptions may be considered together.

They must be considered each with reference to the statement of facts we have taken pains to collate from the elaborate petition of the plaintiffs.

1. Of the objection that the two plaintiffs cannot sue for an undivided two-fifths interest in the property, without citing their co-heirs. This proposition is not supported by authority. 33 Ann. 586, Glasscock vs. Clark; 34 Ann., Carroll vs. Scherer; 5 La. 430; 40 S. 472; 3 La. 134; 2 La. 300.

2. The fact of the succession of the plaintiff's father and mother not having been fully administered, and the shares of the heirs ascertained and liquidated, is no ground of exception. This is not an open question. 32 Ann. 849, Tugwell vs. Tugwell; 33 Ann. 585, Glasscock vs Clark.

This suit is itself an unconditional acceptance thereof.

3. In quite a similar case this court said of a like exception as to the want of a tender as a condition precedent to the institution of suit. "In a suit by the heirs for the recovery of property thus bought by the administrator, the tender of the price of sale, is not necessary as a condition precedent.

"All that equity requires in such cases is to permit the administrator to claim the amount in reconvention." 33 Ann. 744, Heirs of Wood vs. Nicholls.

This case presents many quite similar, if not exactly like features, and we regard that doctrine applicable here.

It would not be equitable to allow plaintiffs to recover the property of their ancestors without making restitution of their proportionate share of whatever sum of money may have been actually realized from its sale and applied to the payment of the debts of the deceased. 30 Ann. 891, Sharkey vs. Bankston; 21 Ann. 385, Connell vs. Well; 23 Ann. 354-540.

On the other grounds of exception we agree with the district judge. The parties to the sales sought to be annulled should have been made parties to the suit in order that the relief demanded be available. 10 R. 387, Hyde vs. Craddock; 32 Ann. 106, Stockmeyer vs. Winder; 32 Ann. 92, Fickel vs. Guinault; 27 Ann. 365, Succession of Ricard.

We are likewise of the opinion that the defendants had the right to require the plaintiffs to elect which of their demands they would

pursue— that for the recovery of the property, or the price. The judgment appealed from is therefore annulled, avoided and reversed, and it is now ordered that this cause be remanded, and reinstated for further proceedings in conformity herewith, and that the defendants pay cost of appeal.

### ON APPLICATION FOR REHEARING.

WATKINS, J. The plaintiffs, as two of the five heirs of R. W. Burney, deceased, claim two undivided fifths of certain lands now in possession of the defendants, and two-fifths of the proceeds of others, which they have already disposed of.

Of 3500 acres, alleged to belong to the succession of their ancestor, only about 1000 are involved in this suit, and they are situated in fractional sections eleven, fourteen and fifteen, of township 16, range 15.

Under certain executory proceedings against the succession of O. O. Woodman, one E. B. Towne became the purchaser of fractional sections eleven and fifteen. He subsequently conveyed to one J. J. Garrard, one-half interest, and he conveyed it to Mrs. L. V. S. Ames. Afterwards, Towne conveyed to John T. Ludeling his remaining one-half interest—the whole of the three fractional lots having been, in the meanwhile, divided into town lots and squares.

Acting as the administrator of the succession of Burney, Towne, subsequently caused the whole of this property to be advertised and sold, and at the sale it was adjudicated to J. T. Ludeling.

It thus appears, that there is in J. T. Ludeling an outstanding title to one-half of fractional sections eleven and fifteen, derived from E. B. Towne; and an outstanding title to the other one-half in Mrs. Ames, derived from Towne—Towne having derived the whole from O. O. Woodman's succession.

By certain succession proceedings, subsequent in date to all the sales just enumerated, Ludeling acquired a title from Burney's estate, to the *three* fractional sections named.

Neither Towne, Garrard, nor Mrs. Ames make any pretensions to section *fourteen* under the conveyances named.

Ludeling, nor his associates, were parties to the sheriff's sale to Towne, nor to Towne's sale to Garrard, nor to Garrard's sale to Ames. Neither of the latter were parties to the probate sale to Ludeling, *eo nomine*.

In this suit, neither Garrard, Towne personally, or as administrator, Mrs. Ames, nor many of Ludeling's associates, are cited, or made parties to this suit; and all these parties are parties to the titles enumerated.

The plaintiffs charge that " said pretended succession sale was made

for the purpose of consummating a *previously* formed agreement, whereby the aforesaid parties divided petitioner's property among themselves — E. B. Towne claiming one-fourth, Mrs. L. V. S. Ames one-fourth, and Ludeling and associates one-half, without any consideration whatever."

They further allege that "*all* of the aforesaid transactions were the attempted consummation of a fraudulent scheme, devised by said E. B. Towne, the said J. J. Garrard and his assigns, and the said John T. Ludeling and his associates, to acquire the aforesaid valuable property of the estate of R. W. Burney, without paying any price therefor."

The prayer of their petition is "that on final hearing hereof, all of the proceedings hereinbefore set forth, to wit: the several purchases by Towne, J. J. Garrard, and J. T. Ludeling, be decreed absolute nullities, in so far as same purport to divest the title of the estate of R. W. Burney, to the aforesaid property; and your petitioners decreed owners of two-fifths interest in such of said properties as now stand in the names of the said defendants."

How can we examine into, and decide the effect of the alléged agreement made and entered into, between Towne, Garrard and Ludeling, in the absence of two of these parties thereto? How can we examine into, and pass upon the alleged fraudulent scheme entered into, by and between Towne, Garrard, Mrs. Aimes and Ludeling and his several associates, in the absence of all the parties, save two of them?

How can we determine the responsibility ·of the parties before the court, for the proceeds of that part of the property that has been disposed of, or the validity *vel non* of the titles to the portion now in their possession, without going into the question of the validity of the title of O. O. Woodman's succession, as contra-distinguished from that of R. W. Burney; and without determining the validity of the probate sale to Ludeling?

It is elementary that every party who may be affected by a decree must be made a party to a suit, because no one should be condemned without a hearing.

This principle is sanctioned in numerous decisions of this court.

The opinion of our predecessors in Hyde vs. Craddock, 10 R. 337, cited in our opinion—was based upon allegations similar to those we have quoted from plaintiffs' petition.

In that case, the court said: "The object of this action being to annull and set aside all the different conveyances which stand in the way of the plaintiffs' rights in their debtor's property, it is obvious that the

annulling of Craddock's title alone, would not, so long as the other sales should be permitted to have effect, attain the ends of the plaintiffs. * *

"We think that, under the allegations and prayer of the petition, all the intermediate vendors of the property should have been made parties to the suit. * * * Fraud is alleged against them, as being in collusion with the debtor—must they not have an opportunity of rebutting these allegations?

"They are treated as a gang of conspirators, whose object in transferring the property from one to another, was to defraud the plaintiffs—shall they be declared to be so, without being allowed to deny the charge, and to show, not only the falsity of the allegation, but, also, the nature, legality and legitimacy of the transaction?

"Shall they be condemned without a hearing? Certainly not."

That is precisely the state of facts we have to deal with in this case.

Counsel, in their brief, states that if defendants stood on the titles they acquired from Towne, and by him from the Woodman sale, "and had we, in the assertion of our rights, found it necessary to attack the validity of these two conveyances, we would have been obliged to make the parties in interest, parties to the suit.

"If likewise, Mrs. Aimes had rested her title on the sale from Towne to Garrard, and from the latter to her, and had we assailed them as being an illegal divestiture of our title, the parties thereto would have been interested in maintaining the same, and, therefore, necessary parties to the suit. But, according to our allegations, which are not denied, these transactions do not even purport to divest our title, but are absolute nullities, on the face of the papers.

"The succession sale is the only divestiture of our title, and it is the nullity of this, only, which is necessary to be decreed in granting us the relief prayed for. In so far as the other transactions are *asked* to be decreed null, the prayer is useless.

"The allegations and prayer substantially ask that the court treat them as absolute nullities, in reaching the nullity of the only transaction by which the plaintiffs are injured."

But we must, for the purposes of defendants' exceptions, take the plaintiff's allegations and prayer as they are quoted above; and so taking them, we must recognize the rights of the defendants to set up in their answer, when it is filed, the reality and validity of any one, or all of the titles enumerated. We are not warranted in assuming that any one of them are absolute nullities, simply because it is so averred. It is true that these averments are not denied, but the defendants have not

636 SUPREME COURT OF LOUISIANA.

been called on, as yet, to answer; and when they do answer, it is quite likely they will deny them all.

In passing upon this motion we must anticipate the joinder of issue, by the defendants, on the plaintiffs' averments, and decide whether the issues thus presented could be determined with the parties before the court.

This is a petitory action, coupled with one for the revendication of the real property in controversy. Its solution will depend upon the proof of the simulation, or reality of the contracts, and sales under consideration. How can that be done without the parties who executed them, and through whom the property passed to the parties defendant?

We have made a careful examination of the authorities bearing upon this question, and have collected the following as pertinent:

In Vandine vs. Ehrman & Lecann, 26 Ann. 388, the court said:

"The object of this suit is to set aside, as simulated and fraudulent, a sale of certain property  *  *  *  and, as the petition discloses other parties in interest, besides those who are made defendants, who were not made parties, we think the exceptions of the defendants should have been sustained."

In Succession of Ricard, 27 Ann. 335, it was said:

"It would be improper to decide anything in regard to the title to this property  *  *  as the vendee is not before the court."

In Zimmerman vs. Fitch, 28 Ann. 454, it was held to be clear " that the plaintiff does not occupy a position which enables her to institute this suit.  *  *  The alleged fraudulent vendor, or transferor,  *  *  is not made a party."

In Miltenberger vs. Weem's Heirs, 31 Ann. 259, the court decided that "not only the holders of the title, but the debtors are necessary parties to a revocatory action."

In Johnson vs. Mayer, 30 Ann. 1203, it was said that an exception of misjoinder "was manifestly not well taken so far as Mrs. Mayer, the vendor, was concerned. She was necessarily joined with the vendor, as defendant."

In Fécel, Administrator, vs. Guimault, 32 Ann. 93., this language was employed, viz.:

"We may as well eliminate here one branch of this case, to-wit: that relative to the sale from Paragean to Rodi.  *  *  Paragean, the vendor, has not been made a party to this suit, and we cannot, in his absence, pass upon its validity."

In Stockmeyer vs. Widner, 32 Ann. 106, the court reiterated the same principle, saying:

" We think it is necessary to have Jacob Widner as a party; and that the rescission of the transaction with him was a necessary incident to the enforcement of plaintiff's demands against Daniel Widner. That, while the transaction with Jacob remained unrevoked, no enforcement could be had of the note by, and for the plaintiffs."

We have collated the foregoing as illustrating what was the jurisprudence on this question, as established by our predecessors, and for the purpose of showing that our opinion, presently under review, is consonant therewith.

The same doctrine has been announced by us, in at least two well considered cases which have been decided since this motion was filed.

In Block vs. Bordelon, 33 Ann. 696, we said on this question :

" That all parties in interest should be joined in a suit, and made parties thereto, when that interest was directly involved, would seem axiomatic. Especially would we be impressed with the truth of this proposition, in a case where it was charged that a contract to which there were two or more parties, was null because they were guilty of fraud in making it. It would seem highly unjust, if not impossible, to investigate and determine the fraud charged, and even to annul the contract — the subject of it — when only one of the alleged wrong-doers was before the court, and the other not heard at all, and no opportunity given him to be heard. So far from this seeming requirement being observed in the case before us, we find that those who are not charged as participants in the fraud complained of, and in no light to be viewed other than mere innocent benificiaries of the same, are alone sued, whilst the one who is accused of planning and consummating the fraud, and inaugurated and conducted the proceedings by which the purpose was accomplished, is left entirely of the case, neither sued nor cited."

In the more recent case of Trounstine vs. Ware & Munn, 39 Ann. 942, we employed this language, viz.:

" The effect of the judgment  *  *  dissolving plaintiff's attachment, and dismissing their suit as to Munn, was to discharge him from the suit, and to eliminate therefrom the question of simulation *rel non*, as this issue could not be tried with Ware, alone. Munn was a necessary party to the suit, in this respect."

In view of these authorities we think the various parties to the sales and contracts enumerated should be cited and made parties defendant, because, in their absence, no decree could be rendered affecting them.

On the other branch of the case, the contention and exception of the defendants are that the demands of the plaintiffs are inconsistent,

in that they sue to have the several sales and acts annulled, and for a part of the price thereof, and they should be required to elect which demand they ⸢will pursue. Our opinion required them to make an election. In their petition the plaintiffs concede that defendants have disposed of parts of the land they claim, to other persons, who bought in good faith, and have thus placed them beyond their reach, and hence they demand of them two-fifths of the proceeds thereof. If their allegations be true, they certainly have stated a cause of action, which would be good in a separate suit; and, under the settled jurisprudence in reference to alternative pleading, they have a standing in court for the price of such portions of the land as have been placed beyond their reach, as admitted in their petition.

Winter vs. Zacharie, 6 R. 467, was a suit in which plaintiff claimed land and slaves, $15,000 a year as the revenues thereof, and "$10,000 as damages for illegally, and forcibly taking possession of his property."

To this suit the defendant tendered an exception to the effect that the "plaintiff had no right to cumulate with his petitory action a personal one against the defendant, whether founded on a claim for damages, or for remuneration for fruits and revenues, or for hire, or otherwise, etc."

This exception was overruled by the district judge, and his action was approved by our predecessors, in the following language, to-wit:

"The district judge correctly overruled the exception taken by the defendant. This action is a mixed one, as defined by Article 7 of the Code of Practice, in which the claim for the fruits, or their value, is an incident to the main action to recover the property."

In Williams vs. Close, 12 Ann. 873, the defendants urged an exception to the inconsistency of plaintiff's demands, and the court said:

"There is a bill of exceptions to the refusal of the court to rule the plaintiff to elect to proceed in one form of action, or the other, either for a slander of title, or in a petitory form, defendants alleging therein that both forms of action could not be tried at the same time. We are of the opinion that a party may institute a petitory action for one tract of land, and, in the same petition, sue the same defendant for slander of title of another and different tract; for he would be only enforcing his *several* rights against the same parties; but he could not, in the same suit, sue for a tract of land in the petitory form, and, also, sue for slander of title of the same tract."

So, in this case, the plaintiffs have not sued for the land *and its price*, but for the enforcement of their several rights against the same parties, as growing out of the same transaction.

In Badillo vs. Tio, 6 Ann. 129, there was judgment against the defendant for the property of the succession in his possession, and for the value of the portion which he had alienated.

On the faith of these authorities we think our decree requiring the plaintiffs to elect, is erroneous, but in other respects it is correct. But as this case is still with us, and the question one of law, a rehearing is unnecessary.

It is therefore ordered and decreed that, in so far as our previous opinion and decree directs and requires the plaintiffs to make an election, the same is annulled and set aside, and the exception of defendants to that effect overruled; and it is further ordered and decreed that in all other respects same remain undisturbed.

Rehearing refused.