SIMON, Justice
(dissenting).
After a careful study of the views expressed in the majority opinion I am convinced that it violates our fundamental principles of law and is in contravention of the public policy of this State. Therefore I cannot subscribe thereto but dissent for the reasons assigned by FOURNET, C. J., in his dissenting opinion as well as for the reasons set forth below.
At the outset let me state that it is my belief that the correctness of judgment of the trial court, sustaining and upholding the plea of res judicata and judicial estoppel, from which this appeal was taken, was one of the primary issues before us.
In order to maintain a continuity of thought relative to my views herein I must indulge to some extent in repetition of facts and law.
In 1951 The California Company had provoked a concursus proceeding, California Company v. Price, 225 La. 706, 74 So.2d 1, hereafter referred to as the “First Price Case”, in the same court, naming the same claimants as those herein named, to determine ownership of proceeds derived from the sale of oil representing royalties from eight producing wells located at different points in Grand Bay than the seven wells involved herein.
In the instant suit prior to any appearance by the State, the Price-Beckwith Group initiated proceedings to have the suit dismissed, filing various pleas and motions, the gist of which was to the effect that the judgment in the First Price Case was res judicata or constituted an “estoppel by judgment” as to any claims by the State.
The trial judge overruled the contentions of the Price-Beckwith Group, holding that the decision in the First Price Case was not res judicata inasmuch as the decree in that case was limited to the distribution of the funds procured from the eight wells which are located at different points in Grand Bay than the seven wells here involved.
In due course the State filed its answer and other pleas, setting forth its claim to the *377 funds deposited herein. The Price-Beck-with Group thereupon filed their answer asserting ownership to said funds and denying the right of the State thereto. By supplemental answer the Price-Beckwith Group reurged their plea of res judicata and estoppel, alleging the validity and effect of Patent No, 1965 as having been finally determined and adjudicated by judgment rendered in the First Price Case in their favor and against the State.
The foregoing plea of res judicata and judicial estoppel was referred to the merits. After trial of the issues as thus made up, the plea of res judicata and judicial estoppel was sustained. The State duly prosecuted this suspensive appeal, and consequently, I believe that the only issue herein presented is whether the judgment rendered in the First Price Case as to the distribution of the funds derived from the eight wells involved therein conclusively and judicially set at rest the status of the funds derived from the seven wells here involved.
Our law of res judicata is stated with simplicity and precision by LSA-Civil Code, Article 2286 as follows:
“The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.”
The distinctness of the salient features of the law of res judicata, namely, the identity that must exist as to the thing demanded, cause of action and persons in the two suits, was emphasized by us in the leading case on this subject, State v. American Sugar Refining Co., 108 La. 603, 32 So. 965, as follows:
“ * * * ‘The exception of the thing adjudged is stricti juris, and if there should be any doubt as to the identity of the things claimed, or of the persons claiming them, it cannot be maintained.’ * * * ‘The plea of res adjudicata is without force, unless the object demanded in the former suit was precisely the same as that demanded in the action pending.’ * * * ‘The only test as to the effect of a decree is its finality as to the matters embraced in it, and its having the requisites of article 2265 (2286) of the Civil Code.’ * * * ‘The authority of res adjudicata takes place only with respect to what was the object of the judgment.’ * *. Our court has never wavered, that we know of, in the rigid exaction of the three unities.”
In Himel v. Connely, 195 La. 769, 197 So. 424, 427, we pronounced the general rule and exceptions thereto as follows:
“ ‘The authority of the thing adjudged takes place only with respect to what was the object of the judgment.’ Rev.Civ.Code, art. 2286.
“ ‘The doctrine of the common law courts that res judicata includes not only every *379 thing pleaded in a cause, but even that which might have been pleaded, does not obtain generally under our system/ * * *
“There are decisions recognizing three exceptions to the general rule which we have quoted, * * *. One of the exceptions * * * is that in a petitory action the parties to the suit must assert whatever titles they have, and not hold back any claim for future litigation. * * * Another exception to the general rule has been made in suits for a partition or division of real estate. * * * And the third exception to the general rule has been made in suits for an injunction against the execution process. * * See, also, Hope v. Madison, 194 La. 337, 193 So. 666.
The foregoing authorities and others of equal force serve to show that we do not accept the common law doctrine of judicial estoppel or estoppel by judgment. We merely have admitted three exceptions to the question of different causes of action. Thus in cases of (1) petitory actions, (2) actions in partition and (3) injunctions against executions of judgments or writs of seizure and. sale these prevailing exceptions to the general rule are recognized. However, in these instances where an exception is made, it is with reference to the question of different causes of action, and no exceptions are made as respects the thing demanded or the object in dispute. In other words, the’ three exceptions to Article 2286 of our LSA-Civil Code in order for the plea of res judicata to prevail must all relate to “cause of action” in cases where the object or thing in dispute and the persons to said suit are the same.
In the instant case the trial judge in his written reasons for judgment, on rehearing stated in part that it is unimportant that a concursus proceeding may or may not fall technically in the category of petitory actions; and that the important thing is that title was the issue in the First Price Case, and the same title is again at issue between the same parties in the instant case. The trial judge further stated that “every claim to title set up by the State in this claim is a claim which the State either made or could have made” in the prioisuit, because all of these claims existed at the time of the first suit.
I believe that it is of great importance to note that a concursus proceeding is an interpleader suit, its nature being as an equitable proceeding designed solely for the purpose of the protection of an innocent stakeholder. By no reasoning can such an equitable remedy be styled or termed a petitory action in any sense of the word. The petitory action is that which he who has the property of a real estate, or of aright upon or growing out of it, proceeds against the person having the possession, in order to obtain the possession of the immovable property, or the enjoyment of the rights upon it, to which he is entitled. Code of Practice Article S. In determining whether *381 a suit is a petitory action, the averments of the petition and answer must be construed in connection with their respective prayers, which fix the character of plaintiff’s action and the nature of the relief sought by the defendant. Plaintiff must allege possession in the other party, and proof of adverse possession is a necessary part of plaintiff’s case, because the petitory action can only be maintained against a party in possession. Foscue v. Mitchell, 190 La. 758, 182 So. 740; Whalen v. Davis, 200 La. 1066, 9 So.2d 424.
Therefore, I cannot agree with the learned trial judge, or with my esteemed colleagues, and find their reasoning in sustaining the plea of res judicata contrary to and directly in conflict with the law of this state as heretofore stated relative petitory actions as well as the law regarding the plea of res judicata, as expressed by us in the case of State v. American Sugar Refining Co., supra [108 La. 603, 32 So. 966], wherein we stated:
“The basic principle of res judicata is found in the necessity that a time should come when the litigation shall cease, in order that the decree of the court may be carried out. That is what the law concerns itself with, that the object of the judgment shall not remain eternally in suspense, but be delivered into the quiet and undisturbed possession of the successful litigant. This is what the Code means when it says that ‘The authority of the thing adjudged takes place only with respect to what was the object of the judgment.’ The law by virtue of which the object of the judgment is delivered is no part of the object of the judgment. It is only one of the reasons for judgment, and res judicata does not take place with respect to the reasons for judgment, but ‘only with respect to what was the object of the judgment.’ Res judicata deals, if we may express ourselves, with the decree of the court, as contradistinguished from the judgment of the court. To give it a wider scope than this is to confound it with stare decisis. The office and function and utility of res judicata is not to settle law questions, but to lend stability to a decree in order that such decree may have effect. If the second suit leaves the successful litigant in the first suit in the undisturbed possession of the thing decreed to be delivered in the first suit, there is no ground for res judicata. * * * ”
It is well settled that the reasons assigned by a court and which influence the ultimate decree do not form part of the decree. It is the decree only that may be set up as res judicata. The opinion of a court is but an exposition of the motives upon which its decree is based. State ex rel. Puritan Co., Ltd. v. City of New Orleans, 169 La. 365, 125 So. 273.
Under this crystal clear principle of our jurisprudence, I cannot agree with the contention that the object or thing demanded *383 and adjudged in the First Price Case involved title to land from which oil had been extracted and that the ownership of the funds on deposit was merely incidental to the thing demanded. A mere reading of the decree of this court in the First Price Case shows that the only object adjudicated thereby was the ownership of the funds on deposit, no adjudication of title to real property being made.
I perforce recognize that the function and utility of res judicata is to render complete effectiveness and stability to judicial decrees. The thing adjudged and only that which has been adjudged must be definitive. It necessarily follows that the binding authority of res judicata must be limited to that which has been demanded, deliberated upon and adjudged in the first suit. If the thing demanded in a second suit or the object in dispute between the same parties be different from that which was demanded and decided in the prior suit, the plea of res judicata or estoppel by judgment cannot be successfully invoked.
It is clear to me that the thing demanded or the object in dispute in the First Price Case was money on deposit in the Registry of the Court, representing accrued royalties from eight wells located on specified governmental sections. The decree was definitive only as to the ownership of those funds. It contained no language affecting title to or describing with particularity any immovable property.[1] In the instant case, the object of the demand and the thing to be adjudged is the ownership of specific funds representing the production from seven wells located in governmental sections other than those involved in the First Price Case.[2] Manifestly, the object or the thing demanded and adjudged as between the parties in the First Price Case, ownership of specific funds, cannot be held to be the identical object or thing demanded in the instant case, nor a relitigation of the funds involved in the First Price Case. Therefore, I believe that the plea of res judicata and judicial estoppel should have been overruled, and the case remanded to the trial court for further proceeding and judicial determination on the merits.
I find a further reason to reverse the judgment of the trial court and remand this cause for a trial on the merits in that pending our deliberation, and prior to the delivery of the majority opinion, counsel for the “State” filed a motion praying that the judgment of the-lower court be reversed and set aside and that the case be remanded to the trial court because of the lack of necessary and indispensable parties hereto *385 with directions that L. Bowman Kinchen and Mary V. Alford Kinchen thereupon be made parties to this proceeding. In the alternative they pray that the matter be remanded to the trial court for the limited purpose of allowing evidence to be offered and a determination had by the trial court as to whether or not L. Bowman Kinchen and Mary V. Alford Kinchen are in fact necessary and indispensable parties to this proceeding, a decision of the case as it is now pending in this court to be held in abeyance awaiting a determination of this question.
In connection with this motion, it appears that Isaac R. Price and Richard F. Price, claimants in the “Price-Beckwith Group,” executed a mineral royalty deed conveying a mineral royalty interest to L. Bowman Kinchen, the mineral royalty interest so conveyed being Jisoth of the whole of any oil, gas or minerals produced from the property described in the leases held by The California Company. This conveyance was executed on June 1, 1951 to be effective, however, as of February 1, 1951, the date of the first production had by The California Company from which the royalty proceeds on deposit were derived. This instrument was recorded on September 9, 1954, in the conveyance records of the Clerk of Court of Plaquemines Parish.
It further appears that on January 22, 1954, in proceeding No. 17,513 of the docket of the Twenty-First Judicial Court for Tangipahoa Parish, in the suit entitled “Mary V. Alford Kinchen v. L. Bowman Kinchen” a judgment of divorce was rendered between said parties. On September 8, 1954 an agreement partitioning their community effects was entered into between the said parties wherein the %soth mineral royalty hereinabove referred to was divided equally between them.
The California Company, in response to this motion, neither admits nor denies the facts alleged, but submits a statement to the effect that after the institution of this concursus proceeding in the lower court, it recorded a notice of lis pendens in the mortgage records of the Clerk of Court of Plaquemines Parish on July 27, 1954; and that, because of the filing of said notice of lis pendens, it was not required to keep and maintain a check on the conveyance records of said Parish during the pendency of this suit.
Isaac R. Price and Richard F. Price also filed a statement in response to said motion, alleging the filing of the notice of lis pen-dens by The California Company and contending that the Jieoth mineral royalty interest accruing from the lands subject to this suit was only acquired by L. Bowman Kinchen and Mary V. Alford Kinchen by recorded title on September 9, 1954, and that because of said notice of lis pendens the said royalty vendees were not necessary parties to this suit but will be bound b)r the judgment herein rendered or any judgment *387 to be hereafter rendered. They further inform us that' the said mineral interest in said royalties transferred to' L. Bowman Kinchen an'd Mary V. Alford Kinchen has been claimed by Isaac R. Price and Richard F. Price, as vendors, for and on behalf of the said L. Bowman Kinchen and Mary V. Alford Kinchen; and that whatever amounts were due to the said Kinchens out of the funds deposited in the registry of the court will be received by said Isaac R. Price and Richard F. Price and will in due course be paid by them to their royalty vendees.
The case of Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896, 897, involved the cancellation of an oil, gas and mineral lease. The sole defendant named therein was the owner of a one-half interest; the other one-half was owned by a corporation through its trustee. Neither the corporation nor its trustee were made parties to the suit. However, since their leasehold interest would be greatly affected by the decree demanded by plaintiffs we accordingly remanded the case to permit the impleading of any necessary party or parties and reserved to all litigants the right to file appropriate pleadings and to . introduce evidence material and relevant thereto. With Justice Hamiter as the author of our opinion, we held:
“It is well established that every person who may be affected by a decree must be made a party to the suit, because no one should be condemned without a hearing! Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248; Succession of Todd, 165 La. 453, 115 So. 653; Commercial National Bank in Shreveport v. Haas, 182 La. 502; 162 So. 57. And.wheré a lack' of necessary parties is apparent the court of its own motion may take cognizance of the defect; it cannot proceed properly without such parties. Ashbey v. Ashbey, 41 La.Ann. 138, 5 So. 546; Succession of Todd, supra; De Hart v. Continental Land & Fur Company, Inc., 196 La. 701, 200 So. 9; Bologna Brothers v. Stephens, 206 La. 112, 18 So.2d 914; Douglas v. Haro, 214 La. 1099, 39 So.2d 744.”
The elementary and axiomatic principle of law enunciated in the case of Heirs of Burney v. Ludeling, supra, is that all parties in interest who may be affected by a decree, or whose interest is directly involved must be made a party to the suit. In that instance we remanded the case so that all of the various parties to sales and contracts involved therein would be cited and made parties defendant because, in their absence, no decree could be rendered affecting them.
In the Succession of Todd, supra, after giving full recognition to the principle announced in the Ludeling case, supra, and after noting that all necessary parties defendant were not made parties to the suit, we held that the court, may even ex proprio motu, notice the defect for it cannot proceed properly without such parties. We *389 observed that wherever a decree may affect the rights of others that the elementary principle announced in the Ludeling case, supra, was applicable.
In Commercial National Bank in Shreveport v. Haas, supra, with Chief Justice Fournet as its author, we recognzied the principle that the record owner of realty or a real right is a proper party to all suits involving the ownership thereof and again sanctioned the elementary principle that one who may be affected by a decree must be made a party to the suit and that no one should be condemned without a hearing.
In the case of Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65, plaintiff failed to name, cite or join the Federal Land Bank as an owner of a mineral interest as a.party defendant because its mineral servitude had allegedly prescribed. With Justice McCaleb as the author we held that the question whether the mineral reservation was a mineral servitude or that such mineral right had been lost by reason of non-production during its ten-year existence could not be properly adjudicated without the joinder of the Federal Land Bank as a party to the suit; that inasmuch as the rights of the Federal Land Bank were affected it was an indispensable party to the litigation. Though the failure to join the Federal Land Bank as a party was not raised in the lower court or before 'us, we considered this of no moment as this court on its own motion may take cognizance of the absence of indispensable parties. Under these circumstances and giving due recognition to the principles announced therein we annulled and set aside thé judgment rendered by the trial court and remanded the case so as to permit the impleading of necessary parties, father than dismiss the suit.
In the instant case it is admitted that L. Bowman Kinchen and Mary V. Alford Kinchen acquired a %eoth mineral royalty interest from Isaac R. Price and Richard F. Price, by deed dated June 1, 1951, and made effective as of. February 1, 1951. The said vendors not only admit said transfer but acknowledge the ownership thereof in L. Bowman Kinchen and Mary V. Alford Kinchen. Further, The California Company has continued to deposit in the registry of the court funds which have accrued and which are attributable to.the 14 th royalty since September 9, 1954, the date of the recordation of the mineral royalty deed in favor of L. Bowman Kinchen and Mary V. .Alford Kinchen, with no intimation or attempt to give recognition-to any interest or claim the said. vendees might have and therefore implead them as parties to this proceeding.
■ It is significant that despite the fact that •Isaac R. Price and'Richard F. Price have conveyed the mineral royalty interest to L; Bowman Kinchen and Mary V. Alford •Kinchen they filed their answer in concursus, alleging and pleading that they were in fact the owners of said interest, notwith *391 standing their actual knowledge that L. Bowman Kinchen and Mary V. Alford Kinchen, by virtue of said deed, owned a portion thereof.
In the case of Placid Oil Co. v. George, 221 La. 200, 59 So.2d 120, 123, we said: “Act 123 of 1922, under which this concursus was instituted, was enacted for the purpose of avoiding a multiplicity of suits, and it contemplates a proceeding leading to one judgment which finally settles all issues betzveen all of the parties. The whole controversy is over the money deposited, and none of the claimants has the right to obtain a judgment in reconvention against the depositor. Hennington v. Petroleum Heat & Power Co. of Louisiana, 194 La. 188, 193 So. 583; Transo Investment Corporation v. Oakley, La.App., 37 So.2d 560. For the proceeding to lie a plaintiff must stand indifferent toward the claimants merely as a stakeholder. 30 American Jurisprudence, verbo Interpleader, Section 8. The provisions of the statute cannot be availed of when a sum equal to the amount deposited may be owed to more than one person. Transo Investment Corporation v. Oakley, supra. All of this is clearly indicated by Section 1 of the statute, LSA-R.S. 13:4811, when it provides that after making the deposit in the registry of the district court the plaintiff shall be relieved of all liability for the payment of said money.” (Underscore ours.)
In view of the foregoing I believe that L. Bowman Kinchen and Mary V. Alford Kinchen are necessary and indispensable parties to this proceeding. The very purpose and spirit of concursus proceedings is to avoid a multiplicity of suits. It contemplates “a proceeding leading to one judgment which finally settles all issues between all parties.” Manifestly, unless all adverse claimants to the %th royalty here involved are cited, heard and their rights determined, a judgment as respects The California Company will not be final and definitive. This is equally true as respects the rights of other parties who may be properly named the owners of an interest in the funds. The California Company is a mere stakeholder in these proceedings and, necessarily, once it deposits the funds to be distributed it is relieved of all liability for the payment of said money so deposited. However, this absolution of liability can be true only if all adverse claimants or persons holding adverse interest have been named and cited as party claimants. Should an adverse claimant be omitted the purpose of concursus proceedings to eliminate a multiplicity of suits will be defeated.
The California Company and the Messrs. Price respectively call our attention to the recordation of the notice of lis pendens filed by The California Company on July 27, 1954 in connection with this concursus proceeding instituted on June 16, 1954. Messrs. *393 Price contend that since the mineral royalty deed in favor of L. Bowman Kinchen was recorded on September 9, 1954, subsequent to the filing of the notice of lis pendens on July 27, 1954 that L. Bowman Kinchen and Mary V. Alford Kinchen are not necessary parties to this suit but are and will be bound by the judgment herein rendered or any judgment to be hereafter rendered. I know of no law or jurisprudence relied upon by the Messrs. Price in support of this contention, nor do they cite any.
Act 22 of 1904, LSA-R.S. 13 ¡3541-3543, declares that the filing of notice of lis pen-dens and having the same registered in the mortgage records of the parish has for its precise purpose the giving of notice to all the world that the plaintiff claims the property involved in the suit, and thus charges everyone, however innocent, with knowledge of that fact, with the ensuing consequence that one then purchases at his peril, even though there is no outward sign of defect in the title of his vendor. Richardson Oil Co. v. Herndon, 157 La. 211, 102 So. 310. Prior to the enactment of the above statute, LSA-Civil Code Article 2453 provided the mere filing of a suit affecting title to real property constituted constructive notice to all the world that the plaintiff claimed the property. Under LSA-R.S. 13 ¡3541-3543, the mere filing of a suit is no longer held to be constructive notice. The filing of a notice of lis pendens and the registration thereof is required but subserves precisely the same purpose as did the filing of the suit under LSA-Civil Code Article 2453.
I know of no legal ground why the filing of a notice of lis pendens by The California Company can defeat and make inapplicable the elementary principle that every person who may be affected by a decree must be made a party to the suit, and that no one should be condemned without a hearing, especially insofar as this principle operates in favor of a party having an interest prior to the filing of the notice of lis pendens. The filing of a notice of lis pendens operates as notice only to those who purchase the property or interest involved in litigation after the suit has been filed and places them on guard of the existence of such litigation. Thereafter, if they deal with the property involved they do so at their peril. Thus the lis pendens statute contemplates and effects such conduct on the part of third persons who deal with the property or interest thereof after the filing of the suit and the notice of lis pendens.
In the instant case, however, the royalty mineral interest of L. Bowman Kinchen and Mary V. Alford Kinchen is shown to have been acquired long prior to the instituting of this suit and the recordation of the lis pendens notice and hence I believe it cannot be held that such notice affects their legal rights one iota.
The contention that the mineral royalty interest of the Kinchens “was only acquired *395 by recorded title on September 9, 1954” is not pertinent under the particular circumstances of this case; and the vendors cannot plead the obvious delay of recordation under our law. Revised LSA-Civil Code Article 2442 provides that the sale of any immovable shall have effect against creditors of the parties and their persons in general only from the day such sale was registered according to law. But this defect of registering shall not be pleaded between the parties who shall have contracted in such act, their heirs or assigns, who are as effectually bound by a sale made under private signature, as if it were by an authentic act. The fact that the transfer of the royalty interest was by authentic act, the failure of immediate recordation does not affect the rights of the parties or signatories thereto.
In a further attempt to defeat the motion to remand Isaac R. Price and Richard F. Price have attached to their answer an affidavit executed by them together with L. Bowman Kinchen and Mary V. Alford Kinchen to the effect that Isaac R. Price and Richard F. Price “have been fully empowered and remain fully empowered, in their own names, to represent L. Bowman Kinchen and Mary V. Alford Kinchen in all matters pertaining to said royalty interest in the aforementioned litigation and that appearers have made and shall continue to make settlements from time to time.” I cannot fail to observe the significance of the fact that this affidavit was signed and executed on January 5, 1957, three days after the filing of the motion to remand.
I believe the obvious answer to the purpose posed by this affidavit is that a party cannot hold himself free from pending litigation and await the rendition of a favorable judgment in the trial court and then, and only then evidence a willingness to answer the same and be bound thereby. To permit such procedure immediately raises the question as to whether or not a similar election would have been made had the judgment of the lower court been otherwise or contrary to the interest of the affiants. The answer to this question is instantly obvious to me.
. In my opinion it being conclusively shown that the Kinchens are the owners by authentic deed of a specific and express mineral interest acquired by them on June 1, 1951, effective as of February 1, 1951, and that they are under our law and jurisprudence necessary and indispensable parties to this proceeding, and the case should have been remanded to permit the impleading of any necessary party or parties, with the right being reserved to all litigants to file appropriate pleadings and to introduce evidence material and relevant thereto.

. LSA-R.S. 13:4202: “All final judgments of district courts, courts of appeal and the supreme court affecting the title to immovable property shall particularly describe the property thereby affected.”

. Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65.