EASTERN DIST.
June, 1836.

GERMAN
*vs.*
GAY ET AL.

GERMAN *vs.* GAY ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The community of acquests and gains is terminated by the death of one of the parties. The survivor has no right to sell the whole property. The heirs of the deceased partner, if they accept the succession, either tacitly or expressly, become joint owners; and if the surviving partner sells, he can convey no greater right than he has himself.

Where the surviving partner sells slaves, or other immoveable property of the community, his vendee will become co-proprietor with the heirs of the deceased partner.

The distinct interest of the parties to the community, attaches at the dissolution of the marriage, subject to the right of the wife or her heirs to renounce, and be exonerated from payment of the community debts.

The heirs of a deceased partner in the community of acquests and gains, having a joint interest, can maintain an action for their interest against the third possessor of a slave, alienated by the husband, after the dissolution of the community.

The husband's authority, as head of the community, ceases on the dissolution of the marriage.

The District Court has jurisdiction of a partition of a community. Both parties cannot, in such case, claim as heirs, and the Probate Court has not exclusive jurisdiction.

This suit is instituted by the heirs of Mrs. Nancy Nicholls, deceased, late wife of Reuben Nicholls, against one Alfred Gay, as the third possessor of a slave which formed part of the community property of Mr. and Mrs. Nicholls, and which was sold by the former to the defendant after the death of the latter.

The plaintiff, Mrs. German, alleges she is sole child and heiress of the deceased, and as such, entitled to half of the community of acquests and gains ; that the slave in question made a part of said community at the death of her mother,

and has been since illegally sold to the defendant, as she is joint owner, and entitled to the one-half, which is of the value of five hundred dollars. She prays judgment against the defendant for this sum, and that the slave be sold to effect a partition, &c.

The defendant pleaded a general denial, and averred that he purchased the slave now in contest from Reuben Nicholls, for the price and sum of six hundred dollars. He cites Nicholls in warranty, and in case of eviction, prays judgment against his warrantor for the sum he loses, &c.

The warrantor pleaded as a peremptory exception, that the plaintiff had never been recognised as heir of the deceased Mrs. Nicholl, by the proper tribunal; that no partition of the alleged community existing between Nicholls and wife had been made, and that this suit cannot be maintained, because it is not alleged that any settlement of the community had taken place, or any partition made.

The facts assumed on the trial of this exception, were, that Mrs. Nicholls died the 3d March, 1835. The plaintiff is her only child by a former marriage with one Thomas Wood. After the death of the wife, Nicholls sold the slave in question to the defendant. A community of property existed between the deceased and her husband, and this slave was acquired during their marriage.

The district judge sustained the exception and dismissed the suit. The plaintiff appealed.

*Benjamin,* for the plaintiff.

1. It appears from the pleadings, which must be taken as true, for the purpose of inquiring into the validity of the exception, that the plaintiff is sole heir of her mother, who was in community with Nicholls, and that the community was owner of the slave mentioned in petition.

2. The plaintiff's title, as heir to one-half of the slave, is a good basis for a petitory action. *Bedford* vs. *Urquhart et al.,* 8 *La. Reports,* 247. See also *La. Code,* 934 *to* 941, inclusive.

3. The judge of the court below is mistaken in the supposition that in the dissolution of a community, each party, or

his, or her representatives, is not entitled to one-half of the specific objects which belonged to the community. See *La. Code*, 2371, *et seq.*   7 *La. Reports*, 216.

4.   The previous settlement of the community was not necessary to entitle plaintiff to sue, for the obvious reason, that even should she be found a debtor to the estate on such settlement, that fact could not possibly impair her title to that moiety of the slave which she inherited from her mother, and which is now sued for.

5.   As to the jurisdiction of the court, the judgment is clearly erroneous.   See *Session Acts of* 1825, *page* 122.   7 *Martin, N. S.*, 469.

*M'Millen* and *Roselius*, contra.

*Bullard, J.*, delivered the opinion of the court.

In this case, the appellant assigns for errors apparent on the face of the record, that the court sustained an exception not valid and maintainable in law.

The plaintiff, as heir at law, of Nancy Trier, late wife of R. Nicholls, and in community with him, sues the defendant for one-half of a slave, of the value of five hundred dollars, which belonged to the community, and which she alleges was sold by the surviving husband, after the death of his wife.

The defendant sets up title to the slave, by sale from Nicholls, and cites him in warranty.   Nicholls, the surviving husband and warrantor, puts in the exception, which was sustained by the court below, and the suit dismissed, to wit: that the plaintiff cannot maintain the present action, because she has never been recognised by the proper tribunal, as heir of Nancy Trier, and there has been no partition of the alleged community, and because it has not been alleged, that any settlement of the community has ever taken place or any partition thereof ever made.   Assuming as facts that the slave was the property of the community, that shortly after its dissolution, the surviving husband took upon himself to sell her at private sale, the question presented by the exception is, whether the heir of the wife has a right to

recover one undivided half, without alleging that a partition had been made, and the community settled.

This suit is substantially one of partition; the plaintiff claiming to be in the right of Mrs. Nicholls, joint owner with the defendant, and demanding a severance of their interest. It cannot be doubted, that the community is terminated by the death of one of the parties; if the husband survives, he has no longer a right to sell the whole property. The heirs of the wife may renounce or accept the community; if they accept either tacitly or expressly, they become joint owners with the surviving husband; and if the husband sells he can convey no greater right than he has himself, and his vendee will become co-proprietor with the heirs of the wife. Suppose he were to sell all the property composing the mass, how could there be a partition at all, between the husband and the heirs? According to our understanding of the code, the distinct interest of the parties attaches at the dissolution of the marriage, subject, however, to the right of the wife or her heirs, as the case may be, to renounce, and thereby exonerate herself from the payment of the debts of the community; in which case she loses all right to the property. "The effects which compose the partnership or community, says the code, are divided into two equal portions between the husband and the wife, or between their heirs, *at the dissolution* of the marriage." *Article 2375.*

That provision of the code which declares that all the property acquired during the marriage, is considered as profits, is regarded by the district judge as a mere rule of evidence, and he is of opinion, that a distinct interest does not vest in the wife or her heirs, before a settlement and liquidation of the community. But if this were true, it would be difficult to reconcile that part of the code, which authorises the heirs of the wife, or herself if she survives, to attack alienations made by the husband even during the marriage, which had been made in fraud of her rights. If her eventual right depended altogether on a settlement to be had of the community, she would be without any right of which she could be defrauded. The community of acquests

EASTERN DIST.
June, 1836.

GERMAN
*vs.*
GAY ET AL.

The community of acquests and gains is terminated by the death of one of the parties. The survivor has no right to sell the whole property. The heirs of the deceased partner, if they accept the succession either tacitly or expressly, become joint owners, and if the surviving partner sells, he can convey no greater right than he has himself.

Where the surviving partner sells slaves, or other immoveable property of the community, his vendee will become co-proprietor with the heirs of the deceased partner.

The distinct interests of the parties to the community, attaches at the dissolution of the marriage, subject to the right of the wife or her heirs, to renounce and be exonerated from payment of the community debts.

GERMAN
vs.
GAY ET AL.

The heirs of a deceased partner in the community of acquests and gains, having a joint interest, can maintain an action for their interest against the third possessor of a slave, alienated by the husband, after the dissolution of the community.

and gains, as regulated by our code, does not differ materially from that which existed by the Spanish law. This question has been much agitated by the jurists of Spain ; and Gomez, in his commentaries on the laws of Toro, gives it as his opinion, that on the dissolution of the community, the rights of the wife attach subject to her right of renunciation. *Gomez ad Leges Tauri, law* 53, *No.* 76. In this case the institution of the present suit was an acceptance of the community, and the plaintiff having a joint interest in the slave, subject to the payment of one-half the debts, the only question is, whether she can maintain this action against a third possessor. That question was settled in the case of Gravier *vs.* Livingston, 6 Martin, N. S., 401.

The pretensions of the surviving husband, (and it must not be forgotten, that the exception comes from him,) rest upon the supposition, that he has in law a right to settle and liquidate the community, and that the rights of his wife depend upon such settlement and liquidation, which must be done with him, and with him alone. If from this he infers that he has a right to sell any of the property, composing the mass of gains of the community, we know not on what law he bases such pretensions.

The husband's authority as head of the community, ceases on the dissolution of the marriage.

His authority as head of the community ceases on the dissolution of the marriage. The right of the heirs of the deceased party then attaches to have a partition of the effects or property, in equal portions, subject to the payment of the debts. If in the present case, the heirs of the wife were now to sue the husband for a partition, the slave in question could not form the direct object of suit or action, because she is no longer in the husband's possession. In effect, he by his own act defeats the very action, the exercise of which he contends is essential to complete the title of the plaintiff.

The District Court has jurisdiction of a partition of a community. Both parties do not, in such case, claim as heirs, and the Probate Court has not exclusive jurisdiction.

It is further said, that the District Court has no jurisdiction of a partition of a community. This court has decided otherwise. Both parties do not in such a case claim as heirs, and, therefore, the Probate Court has not exclusive jurisdiction. 7 *Martin, N. S.,* 470.

We are of opinion the court erred in sustaining the exception.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, that the exception be overruled, and the case reinstated and remanded for further proceedings, according to law; and that the appellee pay the costs of this appeal.