175 So. 42

**LONG et al. v. CHAILAN et al.**

No. 34277.

May 24, 1937.

A. B. Parker and W. A. Benton, both of Baton Rouge, and Charles F. Mc-Michael, of Alexandria, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees Homer V. Smith, Mrs. Irene Long Smith, and Thomas O. Wells.

White, Holloman & White, of Alexandria (Henry & Kelleher, of New Orleans, and Charles H. Blish, of Shreveport, of counsel), for Woodward Wight & Co. and Texas Co.

Gist & Thornton, of Alexandria, for appellee Union Central Life Ins. Co.

O'NIELL, Chief Justice.

The plaintiffs claim an interest in a tract of land, having an area of 1,070 acres, in the parish of Rapides. They are not in possession of the land, and aver that none

of the defendants—and no one else—has possession of any part of it. Hence the suit is said to be of the character which Act No. 38 of 1908 declares "shall be known as the action to establish title to real estate."

The defendants, Thomas O. Wells, Homer V. Smith, Woodward Wight & Co., the Union Central Life Insurance Company, and the Texas Company, filed pleas of (1) nonjoinder, or want of indispensable parties, (2) no cause or right of action; and (3) estoppel. The pleas were argued and submitted on the allegations of the petition, without the offering of evidence. The judge sustained the pleas, and dismissed the suit. The plaintiffs have appealed from the decision. There were other pleas filed, but they are not before the court on this appeal.

The land in contest, and in which each of the four plaintiffs claims a twelfth interest, is described as the W. ½ of the E. ½ and all of the W. ½ of section 2, said to be 513.33 acres, and the E. ½ of the N. E. ¼ and all of the S. E. ¼ of section 3, said to be 256.67 acres, and that part of section 10 that is on the left descending bank of Bayou Cocodrie, except the E. ½ of the N. E. ¼ of the section, and is said to be 300 acres, more or less,— all in T. 1 S., R. 1 E., in the Southwestern Land District of Louisiana. Section 3 is on the west side of and adjacent to section 2, and section 10 is on the south side of and adjacent to section 3.

Thomas O. Wells claims title to that part of the land which embraces the W. ½ of the N. E. ¼ and all of the N. W. ¼ of section 2 and E. ½ of the N. E. ¼ of section 3. This tract is described by a survey thus: Commencing at the northwest corner of the N. E. ¼ of the N. E. ¼ of section 2, thence west along the base line 80.65 chains, thence S. O.° 10' W. 40.91 chains, thence east 80.65 chains, thence N. O.° 10' E. 40.91 chains, to the place of beginning, containing 330 acres, as per plat of survey, etc. The dimensions make the area 329.94 acres.

The Union Central Life Insurance Company has a mortgage on the land claimed by Thomas O. Wells—the mortgage having been granted by Wells' predecessor in title.

Homer V. Smith claims title to the tract lying immediately south of the Wells tract, and described as the W. ½ of the S. E. ¼ and all of the S. W. ¼ of section 2 and the E. ½ of the S. E. ¼ of section 3, and that part of section 10 that is on the north side of Bayou Cocodrie, except the E. ½ of the N. E. ¼, the whole area being "estimated" at 540.07 acres.

The Texas Company has an oil and gas lease on the land claimed by Homer V. Smith, the lease having been granted by Smith.

Woodward Wight & Co. claims the tract described as the W. ½ of S. E. ¼ of section 3, which tract is said to have an area of 80 acres but seems to have an area slightly in excess of 80 acres.

■ In stating the facts of the case we merely repeat, substantially, the allegations of the plaintiffs' petition, assuming, as we must assume, for the purpose of deciding whether the defendants' pleas are well

founded, that the facts alleged by the plaintiffs are the true facts. The plaintiffs claim title by inheritance from Mrs. Lou Toler Cole Long, who married Henry F. Long, Sr., on June 24, 1869, and died, intestate, on December 27, 1886, leaving six children—two sons and four daughters —issue of her marriage with Henry F. Long, Sr. One of the four plaintiffs in this suit is a son and two of them are daughters of Mrs. Lou Toler Cole Long and Henry F. Long, Sr. The other one of the plaintiffs, Elam W. Burnam, married a daughter of Mrs. Lou Toler Cole Long and Henry F. Long, Sr., on August 18, 1897. The daughter died, intestate, on September 20, 1898, leaving one child, issue of her marriage with Burnam. The child was born on September 4, 1898, and died in infancy; that is, on January 3, 1899. Hence Burnam claims that his child inherited from her mother, and that he inherited from the child, a sixth interest in the estate of Mrs. Lou Toler Cole Long. The other son and daughter of Mrs. Lou Toler Cole Long and Henry F. Long, Sr., are made defendants in this suit—and are indispensable parties to the suit—because the plaintiffs are asking for a partition of the land.

The plaintiffs aver that the land which they are claiming was bought by Henry F. Long, Sr., from L. P. Noland, on November 23, 1878, by virtue of a deed which was duly recorded and in which the land was described by it boundaries and by reference to the title of the seller, but was said to contain 200 acres, more or less. The plaintiffs aver that the title to the land, which, notwithstanding the area was

said to be 200 acres, more or less, is the tract containing 1,070 acres, became the property of the matrimonial community then existing between Henry F. Long, Sr., and Mrs. Lou Toler Cole Long; and that at her death her six children inherited her half interest in the land.

The plaintiffs aver that, on March 2, 1901—more than fourteen years after the death of their mother—the sheriff of Rapides parish, acting by virtue of a writ of fieri facias, under a judgment rendered against their father, in a suit entitled Stewart & Haas v. H. F. Long, seized the community property, which their father had bought on November 23, 1878, and sold it to George W. Signor, under the correct description of the 1,070 acres of land. They aver that, on May 5, 1903, George W. Signor made a sale of the 1,070 acres of land, under the correct description, to Mrs. Alice C. Love, who was the daughter of Henry F. Long, Sr., by a previous marriage, and who first married Bert Love and afterwards married Henry Chailan. The plaintiffs aver that Mrs. Alice C. Love knew of their interest in the land and "connived" to defraud them; and that the claims of all of the defendants in this suit are derived, either directly or by mesne conveyance, from Mrs. Alice C. Love, afterwards Mrs. Chailan. They aver that the sheriff's sale to George W. Signor, and the sale by him to Mrs. Alice C. Love, were null, as far as the plaintiffs' interest in the land was concerned, because the judgment held by Stewart & Haas, to satisfy which the land was seized and sold, was a personal judgment against Henry F. Long, Sr., rendered

long after the community was dissolved by the death of Mrs. Lou Toler Cole Long, for a debt which arose after the dissolution of the community, and for which neither she nor her estate was in any way liable.

The plaintiffs aver that the succession of Mrs. Lou Toler Cole Long was never opened, and that they now accept the succession unconditionally. Elam W. Burnam makes the same allegation with regard to the succession of his wife, and that of his child. Hence the plaintiffs pray that they, the son and two daughters, and the deceased daughter, be recognized as four of the six heirs of Mrs. Lou Toler Cole Long; that the deceased child of Burnam be recognized as the heir of her mother, and that he be recognized as the heir of the child; and that the plaintiffs be sent into possession of the estate, jointly with the other son and daughter of Mrs. Lou Toler Cole Long, who are defendants in the suit. The plaintiffs pray that, as far as they are concerned, the sale made by the sheriff to George W. Signor, and the sale by him to Mrs. Alice C. Love, and the sales made by her and by her transferees, and by virtue of which the defendants claim title—and the mortgage held by the Union Central Insurance Company, and the oil and gas lease held by the Texas Company—shall be annulled and set aside, and be cancelled from the records.

The plea of nonjoinder of the necessary parties as defendants is founded upon the theory that this is an action to annul the sheriff's sale to George W. Signor, and the subsequent sales by which the defendants claim title from Signor. Hence it is contended by the defendants that the sheriff, or his successor in office, and George W. Signor, and all who were parties to any of the subsequent sales, by which the defendants claim title from Signor, ought to be made parties, as defendants, in this suit,—even though such parties have no interest in this controversy.

It is true that all of the parties to a sale or other transaction are indispensable parties in a suit to annul the transaction. But, strictly speaking, this is not a suit to annul the sheriff's sale to George W. Signor, or the subsequent sales by which the defendants claim title from Signor. The only reason why the sheriff's sale to Signor and the titles emanating therefrom are said to be null, as far as the plaintiffs in this suit are concerned, is that the sheriff sold their property as the property of their father, and for the debt of their father. The suit is based upon article 2452 of the Civil Code, which declares that a sale of property belonging to another person—meaning a person other than the one who sells—is null. That fundamental doctrine is as appropriate to a forced sale, made by virtue of a writ of fieri facias directed against one who is not the owner of the property seized and sold, as it is to a conventional sale made by one who is not the owner of the property. In either case, the true owner of the property, in order to maintain his title, is not obliged to bring an action of nullity against the seller and the buyer, to annul the sale. If the property is real estate, and the party who bought it from one who was not the owner is in posses-

sion of it, the owner may bring a petitory action, and let the defendant set up his deed from the one who was not the owner of the property. Of course, if the defendant in a petitory action, or one who is to be made defendant in such an action, holds a deed from one who could have conveyed a valid title—and if the nullity or invalidity in the defendant's title is only a defect in the making of the sale or other transaction by which the defendant claims title—the plaintiff cannot successfully attack the transaction collaterally, but must bring a direct action to annul it, and in such a suit they who were parties to the transaction must be made parties to the suit. Graham v. Hester, 15 La.Ann. 148; Bankston v. Owl Bayou Cypress Co., 117 La. 1053, 42 So. 500; Vinton Oil & Sulphur Co. v. Gray, 135 La. 1049, 66 So. 357; St. John Lumber Co. v. Federal National Bank, 143 La. 693, 79 So. 223; Succession of Todd, 165 La. 453, 115 So. 653. But, if a person who intends to bring a petitory action knows or anticipates that the defendant will depend upon a sale from one who was not the owner of the property, the plaintiff is not obliged to set up the sale and sue to annul it. In such a case, if the plaintiff in his petition refers to the sale by which the defendant claims title— and at the same time avers that the sale should be annulled—the plaintiff does not thereby convert his suit into an action of nullity, requiring all who were parties to the sale to be made parties to the suit. Reynolds v. Stille, 15 La.Ann. 543; Bledsoe v. Erwin, 33 La.Ann. 615; Beland and Johnson v. Gebelin and Duggan, 46 La. Ann. 326, 14 So. 843, 844; Heirs of Ford

v. Mills and Philips, 46 La.Ann. 331, 332, 14 So. 845; Dauterive v. Opera House Association, 46 La.Ann. 1316, 1317, 16 So. 170; Mays v. Witkowski, 46 La.Ann. 1475, 16 So. 478; Jewell v. DeBlanc, 110 La. 810, 34 So. 787. In the case of Castillo v. McConnico, 168 U.S. 674, 18 S.Ct. 229, 230, 42 L.Ed. 622, which was an action to annul a tax sale of a square of ground in New Orleans, and thereby to recover the property, on the ground, among other grounds, that the sale was made under an assessment in the name of one who did not own the property, Chief Justice White referred to the suit as "being known under the Louisiana Code as a 'petitory action.'" And the chief justice cited article 43 of the Code of Practice. In this connection, it is a matter of no moment to say that a sale of property not owned by the seller is not null but only voidable because the owner may ratify the sale. Article 2452 of the Civil Code does not declare that such a sale is only voidable at the instance of the owner of the property, but declares: "The sale of a thing belonging to another person is null." And in fact such a sale is null if the owner of the property does not ratify the sale.

We have said that the owner may ignore a sale of his property by one who had no authority to sell it, and may bring a petitory action against the party in possession. By the same token, if the party claiming the property under such a sale is not in possession of it, the owner may bring the action provided for by Act No. 38 of 1908. It would be anomalous to say that one who claims title under a null sale is in a better position to defend

his claim if he remains out of possession of the property than he would be if he were in possession. There is no substantial reason why the plaintiffs in this case should sue the sheriff of Rapides parish, or George W. Signor, who, long ago, disposed of whatever title he had to the land in contest. In the case of Beland and Johnson v. Gebelin and Duggan, supra, the court said: "If the defendant deems it to his interest that his vendor * * * be brought into the proceedings, it is for him to take steps leading to that. end." Our conclusion is that the pleas of nonjoinder, filed by the Union Central Life Insurance Company and Woodward Wight & Co., are not well founded.

■ The exception of no cause or right of action was filed by all of the defendants whom we have named. There is authority for the proposition that this is an appropriate way of pleading that all of the indispensable parties are not before the court. Willis v. Wasey, 42 La.Ann. 876, 8 So. 591, 879; St. John Lumber Co. v. Federal National Bank, 143 La. 693, 697, 79 So. 223, 226; Harvey v. Engler, 184 La. 858, 168 So. 81. The exceptions of no cause or right of action, in this case, however, are founded also upon several other and distinct propositions. In the first place, it is contended that the tract of land which Henry F. Long, Sr., is said to have bought from L. P. Noland on the 23d day of November, 1878, and which was described in the deed by its boundaries and by reference to Noland's title, and which was said to contain 200 acres, more or less, cannot be—or does not appear to be—the tract containing 1,070 acres which the sheriff sold to George W. Signor, on March 2, 1901, and which is claimed by the defendants in this suit. The answer to that is that the plaintiffs allege—in paragraph IV of their petition—that the sheriff seized and sold to Signor, on March 2, 1901, under the correct description of the 1,070 acres, "the said property," referring to the land which Henry F. Long, Sr., bought from Noland on November 23, 1878, by a deed in which the land was said to contain 200 acres, more or less. Whether the land which the defendants claim, containing 1,070 acres, is the same land that Henry F. Long, Sr., bought from Noland on November 23, 1878, as having an area of 200 acres, more or less, is the question to be decided on the merits of this case, if the defendants deny the plaintiffs' allegations in that respect. We must bear in mind that the plaintiffs aver that the defendants are claiming by virtue of the sheriff's sale of the land of Henry F. Long, Sr., to George W. Signor, and aver that the land so sold to Signor is that which Henry F. Long, Sr., bought from Noland on November 23, 1878, during the existence of the matrimonial community between Long and the plaintiffs' mother. It may be that the land which the defendants are claiming was not so acquired by Henry F. Long, Sr.; but that question cannot be decided on the exception of no cause or right of action—submitted on the allegations of the plaintiffs' petition. In this connection, the defendants cite the case of Bender v. Chew, 129 La. 849, 850, 56 So. 1023. What was said in that case on the subject of identifying lands by the recorded descriptions may become appropriate to

this case if the defendants put at issue the allegations of the plaintiffs' petition in that respect. But the doctrine of Bender v. Chew is not applicable to the question whether the plaintiffs, in their petition in this case, have disclosed a cause of action.

In this connection the defendants point out that the plaintiffs, in the prayer of their petition, describe, separately, five tracts of land, in which the plaintiffs claim an interest. The description of the land claimed in the prayer of the petition is very confusing, but is understandable, if carefully analyzed, thus: Tract No. 1, in the prayer of the petition, is described by boundaries, and as containing 200 acres, more or less—as in the deed by which Henry F. Long, Sr., is said to have bought the land in dispute from L. P. Noland, on November 23, 1878. Tract No. 2 is the tract claimed by Woodward Wight & Co., being the W. ½ of S. E. ¼ of section 3, and is included, of course, in the description of tract No. 1, if the description of that tract can be identified as the land which the defendants are claiming. Tract No. 3 is a correct description, by government subdivisions, of the land claimed by Homer V. Smith, on which the Texas Company claims an oil and gas lease, and is likewise embraced in tract No. 1, if the description of that tract can be identified as the land which the defendants are claiming. Tract No. 4 is a description, by boundaries, of the 330-acre tract claimed by Thomas O. Wells, on which the Union Central Life Insurance Company holds a mortgage; and tract No. 5 is a description of the same 330-acre tract, by a survey, or by courses and distances. This tract also, of course, is a part of tract No. 1, if the description given of that tract can be identified as the land claimed by the defendants. We do not know why the plaintiffs duplicated the descriptions, as they did, in the prayer of their petition. The only effect was to cause confusion; which, however, might be removed by means of an exception of vagueness.

Another argument of the defendants in support of their exception of no cause or right of action is that they acquired their titles on their faith in the public records, and that the title which the plaintiffs are asserting was not a matter of record when the defendants acquired their title. The defendants cite the leading case on the subject, McDuffie v. Walker, 125 La. 152, 51 So. 100, maintaining, according to article 2266 of the Civil Code, that a sale or other contract or a judgment affecting immovable property does not affect third persons until it is recorded. So far as that argument has reference to the imperfect description in the deed by which Henry F. Long, Sr., is said to have acquired the property in dispute from L. P. Noland, on November 23, 1878, the argument has reference to the merits of the case. So far as the argument has reference to the fact that the plaintiffs' inheriting a title from their mother was not a matter of record, the argument cannot prevail, because, according to the decisions which we shall refer to hereafter, it is well settled that article 2266 of the Civil Code, or the doctrine of McDuffie v. Walker, is not to be construed so as to defeat the rights of heirs who inherit from their mother her half interest in the community

property, bought in the name of her husband.

This discussion leads to another proposition on which the exception of no cause or right of action is founded. It is contended by the exceptors that the plaintiffs cannot maintain their suit under the provisions of Act No. 38 of 1908, because, it is said, the statute gives the right of action only to those who "lay claim to land by recorded title." The term "recorded title" has not the significance that the defendants in this case ascribe to it. The statute declares that in all cases where two or more persons lay claim to land by recorded title, and where neither of the claimants is in actual possession of the land so claimed, either of them may bring suit against the other to establish the plaintiff's title. Before the statute was enacted, the law was that a petitory action could be brought only against a person in possession, and that a possessory action, or an action for slander of title, could be brought only by a person in possession. There was no statute providing for a suit to settle a dispute between two adverse claimants where neither of them was in possession. The act of 1908, therefore, merely gives to a claimant not in possession the same right to sue an adverse claimant not in possession that the plaintiff has to sue an adverse claimant in possession. Before the statute was enacted it was well settled by the decisions of this court that a party who claimed title by inheritance could maintain a petitory action against a party in possession by virtue of a recorded instrument purporting to invest him with a title

to the land in dispute. It would be unreasonable to construe the act of 1908 as giving to a claimant out of possession of the land an immunity that is not given to a claimant in possession—against a suit by one who owns the property by inheritance, and whose immediate title, therefore, is not a matter of record. It is suggested that a party claiming title by inheritance must first obtain an ex parte judgment, recognizing him to be an heir and ordering him sent into possession of the estate of the deceased person from whom he claims to have inherited, before he can maintain a suit under the act of 1908, against an adverse claimant not in possession. But it is well settled that one who claims title by inheritance is not obliged to obtain such an ex parte judgment before bringing even a petitory action—against a claimant in possession. German v. Gay, 9 La. 580; Waring v. Zunts, 16 La.Ann. 49; Ware v. Jones, 19 La.Ann. 428; Bennett v. Fuller, 29 La.Ann. 663; Tugwell v. Tugwell, 32 La.Ann. 848; Glasscock v. Clark, 33 La.Ann. 584, 585, overruling Phelan v. Ax, 25 La.Ann. 379, and overruling Daniel v. Ivy, 26 La.Ann. 639. See, also, Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248, and Durbridge v. Crawley, 43 La.Ann. 504, 9 So. 95, 96, where it is said:

"The order of recognition might have been obtained ex parte. It is prayed for contradictorily with the defendant and warrantor.

"An heir can sue directly without having been recognized as an heir by the probate court, and prove his heirship and his right to recover as an heir. 'All that

can be required of him is to furnish satisfactory evidence of his right to inherit.'" Here the court cited the decisions.

■ On this question the defendants cite and rely upon Blum v. Allen, 145 La. 71, 81 So. 760; Fortner's Heirs v. Good Pine Lumber Co., 146 La. 11, 83 So. 319; Charnley v. Edenborn, 163 La. 945, 113 So. 156, 158; and Edwards v. Carr, 175 La. 847, 144 So. 595. In Blum v. Allen, it was said that the Inheritance Tax Law, then Act No. 109 of 1906, had wrought a change in the law in this respect, and hence that an heir had to obtain an ex parte judgment ordering him sent into possession of the property which he had inherited, before he could sue to recover the property from an adverse claimant. That doctrine was overruled in Bonvillain v. Richaud, 153 La. 431, 96 So. 21, where it was held that the Inheritance Tax Law had not made it necessary for an heir to obtain an ex parte judgment ordering him sent into possession as a condition precedent to his suing an adverse claimant for the property which he, the heir, had inherited. In Fortner's Heir v. Good Pine Lumber Co., the plaintiffs claimed title as the heirs of John Fortner and alleged that they had a recorded title. It does not appear that there was any dispute about their title being a recorded title. It may well be that their allegation that they had a recorded title had reference to their ancestor's title. In fact, the reasonable and logical construction of Act No. 38 of 1908 is that, where the plaintiff has a title by inheritance, it is sufficient that his ancestor's title is a recorded title. Otherwise, the statute would give to a claimant of land out of possession a defense which the law does not give to a claimant in possession—against one who holds title by inheritance. In Charnley v. Edenborn, cited by defendants, the court held that "plaintiff has [had] such a recorded title as to furnish a sufficient basis for his action to establish title under Act 38 of 1908," notwithstanding a misdescription in the title as recorded. The case of Edwards et al. v. Carr et al., cited by defendants, was decided in favor of the defendants on a plea of prescription of ten years, acquirendi causa. There was nothing said as to the necessity for the plaintiffs to have a recorded title. Our conclusion on this subject is that, where the plaintiff in a suit under the provisions of Act No. 38 of 1908 claims title by inheritance, nothing more in the form of a recorded title can be required of him than that the title which his ancestor had, and which the plaintiff inherited, is a recorded title. This interpretation is not only reasonable but is necessary to avoid an absurd consequence.

■ The Union Central Life Insurance Company makes the further contention that the plaintiffs have no right of action without first tendering to the company the amount of its mortgage. The attorneys for the insurance company cite Denis v. Clague's Syndics, 7 Mart. (N.S.) 93, 96; Stockton v. Downey, 6 La.Ann. 581; McEnery v. Pargoud, 10 La.Ann. 497; and Farquhar v. Iles, 39 La.Ann. 874, 2 So. 791. Denis v. Clague's Syndics maintains merely that a buyer who discovers a defect in his title has not the right to rescind the sale but has the right merely to withhold payment until security is given by the

seller. In Stockton v. Downey, and in Farquhar v. Iles, the defendant held title under a sale made in foreclosure of a valid mortgage granted by the owner of the property. McEnery v. Pargoud is not in point, and seems to be not the case intended to be cited. Our opinion is that a tender of reimbursement is not a prerequisite to the bringing of a suit to recover property alleged to have been illegally sold or mortgaged. Reimbursement in such a case is a matter for the defendant to set up as an alternative demand, in compensation. It was so decided in Germaine v. Mallerich, 31 La. Ann. 371; and in Heirs of Burney v. Ludeling, 41 La.Ann. 627, 632, 6 So. 248; and in Nicol v. Jacoby, 157 La. 757, 767, 103 So. 33.

Our conclusion is that the defendants' exceptions of no cause or right of action are not well founded.

The plea of estoppel was filed by Woodward Wight & Co. and by the Texas Company. The plea is founded upon the laches, and long delay of the plaintiffs in bringing the suit, and upon the fact that two of the plaintiffs, Mrs. Gunter and Mrs. Edgar, in 1905, filed suit against Mrs. Alice C. Chailan, on the same cause of action that is now alleged, and that the suit was adjudged abandoned, for nonprosecution during five years, and was therefore dismissed by a judgment dated March 10, 1922; and that again, in 1919, Mrs. Gunter and Mrs. Edgar brought a similar suit against Mrs. Chailan, and again, by a judgment dated May 29, 1936, the suit was adjudged abandoned and was therefore dismissed.

As to the long silence and delay in the bringing of this suit, especially on the part of the two plaintiffs who were not plaintiffs in the former suits, it was said in Pearce v. Ford, 124 La. 851, 50 So. 771, that mere silence and delay could not cause a loss of title to property except by effect of the laws of prescription. In Charbonnet v. State Realty Co., 155 La. 1044, 99 So. 865, it was held that a judgment dismissing a suit on the ground of abandonment, for a neglect to prosecute the suit for five years, under the provisions of article 3519 of the Revised Civil Code of 1870, as amended by Act No. 107 of 1898, was not a basis for a plea of estoppel or res judicata. In the present case, however, we express no opinion, and render no judgment, on the plea of estoppel. We agree with counsel for the plaintiffs that evidence should be heard on the plea of estoppel. The judge of the district court, in a very well prepared opinion, discussed at length the exceptions of nonjoinder and no cause or right of action, but referred to the plea of estoppel only to say that it should be sustained. As we have concluded to set aside the judgment appealed from, and to overrule the exceptions of nonjoinder and no cause or right of action, and to remand the case for further proceedings, all parties to the suit will have an opportunity to be heard and to offer evidence on the pleas of estoppel.

The judgment appealed from is set aside, the exceptions of nonjoinder and of no cause or right of action are overruled, and the case is ordered remanded to the district court for further proceedings consistent with the opinion which we have ex-

pressed. The defendants are to pay the costs incurred in the matter of the exceptions of nonjoinder and of no cause or right of action, including the costs of this appeal. The question of liability for all other costs is to depend upon the final disposition of the case.