McCALEB, Justice.
 

 This is a petitory action in which the plaintiffs seek to recover a three-fourths interest in’ 74.64 acres of land situated in Claiborne Parish, by virtue of their ownership as heirs of their deceased half-sister, Angall Bishop Walton.
 

 Angall Bishop Walton was the only child of the marriage of Tom Bishop to Janie Butler Bishop. Janie Butler died in 1912 and thereafter Angall, as sole heir of her mother, inherited by representation a one-
 
 *289
 
 seventh interest in a tract of land situated in Sections 11, 12, 13 and 14, T. 23 N. R.
 
 7
 
 W., Claiborne Parish, comprising 525 acres and known as “The Butler Tract”. This land, which was owned in indivisión by the surviving children of William Butler, Sr. and his wife, Lugene Butler, and the descendants of their predeceased children, was divided into 7 separate parcels and partitioned in kind by the heirs on December 29, 1937. In' this act, Angall Bishop Walton received the 74.64 acres in contest. However, the partition deed conveyed to her only the surface of the land, as the Butler heirs declared in the act that they did not desire a division of the mineral rights and interests in and under the 525 acre tract. And, by specific provision, they reserved those rights to themselves in indivisión, thus, creating a mineral servitude on the whole.
 

 Following the death of Janie Butler, Tom Bishop married Mittie Evans. Nine children were born of this union', seven of whom now survive and are the plaintiffs in this case.
 
 [1]
 
 On June 6, 1939, Angall Bishop Walton died intestate and without issue, being survived by her father, Tom Bishop, and the plaintiffs, her half-sisters and brothers. Her succession was opened in Claiborne Parish and, by an ex parte judgment rendered in those proceedings, Tom Bishop was decreed to be the sole heir of Angall and, as such, sent into possession' of the property in dispute. Subsequently, on December 30 1939, Tom Bishop mortgaged the property to J. E. Burnette. Following foreclosure proceedings resulting from nonpayment of the mortgage debt, the land, was adjudicated at a public sale on Febuary 15, 1941 to Burnette and, on December 13, 1943, he conveyed the tract to Willie Copeland, defendant herein.
 

 Plaintiffs’ claim, as aforesaid, is founded on their inheritance of a three-fourths interest in the land as heirs of Angall Bishop Walton. In limine, defendant filed an exception of no cause of action' and a plea of estoppel. When these were overruled, he answered admitting the facts but denied the validity of plaintiffs’ contention. In the alternative, he pleaded that, should plaintiffs’ demand be recognized, he was entitled, as a possessor in good faith, to recover three-fourths of the value of the improvements he had made upon the property amounting in all to $4,500. Additionally, he called his vendor, J. E. Burnette, in warranty praying that, in the event he should be cast in the action, he should have judgment against Burnette for three-fourths of the purchase price he paid for the property plus all other damages and costs which might be sustained.
 

 During the pendency of the suit in the district court, Tommie Lee Bishop, a minor represented herein by his mother and natural tutrix, Mittie Bishop, conveyed to one
 
 *291
 
 Lárkin Brantley an undivided one-half of his interest in the mineral rights owned by him in the 525 acre tract. This interest is a fractional part of the undivided one-seventh interest of Angall Bishop Walton in the minerals in and under the tract which was reserved at the time of the partition of. the Butler estate by the heirs of William Butler and his wife. Following the sale from Tommie Lee Bishop to Larkin Brantley, defendant filed a rule in these proceedings directed to Brantley and the minor, through the natural tutrix, in which he prayed that they be ordered to show cause why he should not be permitted to deposit in court the price of the transfer and thereby be released from all claims, under Article 2652 of the LSA-Civil Code, of either Larkin Brantley or Tommie Lee Bishop as to that proportion of the minerals transferred by the minor to Brantley because, allegedly, the transaction constituted the conveyance of a litigious right.
 

 In accordance with the defendant’s prayer, a rule to show cause issued and, on the áppointed day, Larkin Brantley and the tutrix of Tommie Lee Bishop appeared and resisted defendant’s contention. Subsequently, after a number of continuances, the rule was heard and submitted for decision. Meanwhile, the main issues in contest were tried, argued and submitted and, on November 16, 1951, judgment was rendered in favor of plaintiffs as prayed for. In this judgment, defendant’s rule to show cause was dismissed and his demands for compensation for improvements to the land and for redress against his warrantor, Burnette, were rejected as premature, the judge, however, reserving to him the right to renew these demands in another action. Defendant has prosecuted this appeal from the adverse decision.
 

 At the outset, it is apt to state that defendant concedes, as he must, that plaintiffs, being the brothers and sisters of the half blood, inherited three-fourths of An-gall’s succession and that Tom Bishop, her fathér, inherited only one-fourth. Articles 911 and 913 of the LSA-Civil Code. Defendant’s initial contention, which is re-urged here under his exception of no cause of action, is that plaintiffs’ demand should nonetheless be rejected for the reason that their ownership has not been registered and that he, being a third person dealing with immovable property, was entitled to depend on the faith of the public records.
 

 There is no merit in the point. It is well settled that our law of registry, Articles 2251 through 2266 of the LSA-Civil Code, is not applicable when the ownership of, or claim affecting, the immovable has become vested in the claimant by mere operation of law. See Long v. Chailan, 187 La. 507, 175 So. 42 and Dugas v. Powell, 207 La. 316, 21 So.2d 366. In the case at bar, plaintiffs’ ownership was acquired by inheritance from Angall Bishop Walton immediately after her death, Article 940 of the LSA-Civil Code, and they became seized of her succession at that time, the
 
 *293
 
 right of possession being continued in them “as if there had been no interruption, and independent of the fact of possession.” Article 942 of the LSA-Civil Code.
 

 The cases relied on by counsel for defendant,
 
 [2]
 
 particularly that of Humphreys v. Royal, 215 La. 567, 41 So.2d 220, are not apposite. Those- authorities do not extend the provisions of Article 2266; they merely apply them as written and stand only for the proposition that, whenever a person has a claim to or affecting immovable property founded on a sale, contract or judgment, he cannot be protected against third persons unless the sale, contract or judgment is of record.
 

 Defendant depends heavily on his plea of estoppel. This plea is based, in part, on Article 1839 of the LSA-Civil Code which provides:
 

 “But if the person, who is really entitled to the quality assumed by the one with whom the contract is made,
 
 has contributed to the error by his neglect or by
 
 design, it will not vitiate the agreement. And in the case above stated, a payment to, or a compromise with one, whom the true heir suffered to remain in possession of the inheritance, and to act as heir, without notice, would be valid.” (Italics ours.)
 

 It is professed by counsel for defendant that plaintiffs have estopped themselves from claiming ownership of an interest in the land because they sat idly by and permitted their father to be placed in possession of Angall’s succession as sole heir; that they knew that he wás mortgaging the land to Burnette and that they, over a long period of time, allowed him to deal with the property as sole owner without protest.
 

 The proposition is not tenable. In the first place, the contention, even if it were otherwise sound, could affect only two of the plaintiffs as the other five were minors at the time their father, Tom Bishop, was placed in possession of Angall’s estate. But above this, the asserted inaction of plaintiffs could not constitute an estoppel as it is the firmly established jurisprudence of this court that mere silence and delay cannot effect a loss of title to property other than by the laws of prescription. Long v. Chailan, supra; Tyson v. Spearman, 190 La. 871, 183 So. 201; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Dugas v. Powell, supra; Dileo v. Dileo, 217 La. 103,
 
 46
 
 So.2d 53 and Juneau v. Laborde, 219 La. 921, 54 So.2d 325.
 

 The facts of this case are not such as to bring it within the purview of Article 1839 of the LSA-Civil Code.' Tom Bishop was an heir and was entitled to possession
 
 *295
 
 for himself and also in his capacity as administrator of the estate of his minor children. LSA-Civil Code Article 221. Hence, it can hardly be said that the two plaintiffs who were majors at the time their father took control, should have protested so that third persons would not be misled. Indeed, it is exceedingly doubtful that they were aware of their legal rights but, even if they had been, we do not think that this circumstance would authorize the application of Article 1839. That article does not provide that knowledge, coupled with silence and inaction, will sustain an estoppel. Albeit, it must be shown that the neglect or design of the heir “has contributed to the error”, that is, he must aid and assist in bringing about the error either by an affirmative act or an omission to act when the circumstances confronting him prompted action. Plaintiffs’ mere inaction in this case did not contribute to the error of Burnette or that of defendant in their reliance upon the judgment placing Tom Bishop in possession of Angall’s succession as sole heir.
 
 [3]
 
 See Tyson v. Spearman, supra.
 

 The cases of Hammon v. Sentell, 160 La. 589, 107 So. 437 and Marshall v. Smedley, 166 La. 364, 117 So. 323, cited by counsel, are not controlling here. In Hammon v. Sentell, the heirs contributed to the error of the purchaser of the plantations by their action in accepting legacies under the will of the testator and allowing his concubine and his two illegitimate children to take possession of the plantations as the legal residuary legatees under the testament.
 

 The original opinion in Marshall v. Smedley, upon which counsel for defendant relies, cannot be viewed as authority for defendant’s position for the reason that it was annulled and set aside on a rehearing, the Court having discovered that appellants had not filed a plea of estoppel.
 

 On the other branch of defendant’s plea of estoppel, it is said that, inasmuch as plaintiffs (or some of them) tacitly accepted the succession of their father, Tom Bishop, they cannot now be heard to assail the title to any property alienated by him.
 

 We find no substance in this plea for two reasons. Primarily, the record does not show to our satisfaction that there has been a tacit acceptance by plaintiffs of their father’s succession. The only evidence on this question was elicited from Mittie Bishop on cross-examination, • who asserts that the only property left by Tom Bishop was some household furniture, two mules, one hog and a growing crop. The mules were turned back to the Federal 'Government; the hog was sold and the proceeds applied to the funeral. The household furniture was kept by Mittie and the growing
 
 *297
 
 •crops gathered by her, assisted by her son-in-law and her minor child, Tommie Lee Bishop. Thus, it is seen that Mittie, as surviving spouse in community and entitled as such to the usufruct of whatever was inherited by her children, took charge of the succession effects. This does not constitute a tacit acceptance by the heirs.
 

 Moreover, the doctrine of estoppel invoked by counsel is based on the theory that the heirs, who accept the succession of the de cujus, stand in the same position and assume all obligations of warranty which he'may have had. Arnett v. Marshall, 210 La. 932, 28 So.2d 665 and cases there cited. This doctrine is totally without pertinence here for the reason that Tom Bishop did not warrant the title to the land in contest; he merely mortgaged it. Defendant’s title stems from a foreclosure sale, not a warranty deed. See Little v. Barbe, 195 La. 1071, 198 So. 368.
 

 Nor do we find any basis for the rule to show cause taken by defendant in which he sought to have himself released from a so-called litigious right by paying to the transferee the price of the transfer, under authority of Article 2562 of the LSA-Civil Code. This alleged litigious right was, as we have above stated, the mineral interest of the minor, Tommie Lee Bishop, in the 525 acre tract which he conveyed to Larkin Brantley.
 

 Obviously, those mineral rights are not at issue in this suit. They were purportedly outstanding in the Butler heirs as a servitude on all the land in the Butler estate, including the parcel in controversy, at the time Burnette acquired it at Sheriff’s sale. Therefore, the mineral rights did not pass to Burnette and the latter could not, because he did not own them, transfer them to defendant. The only way that the mineral rights in and under the tract involved could possibly have been placed at issue would have been in support of a claim that the original servitude has become extinguished by nonuser or that it was invalid ab initio. But those questions are not presented here. Indeed, matters of that sort could not be considered without impleading the owners of the servitude—the Butler heirs, or their transferees. Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65.
 

 Therefore, since the alleged litigious right from which defendant seeks to obtain a release is not being asserted in this litigation, the rule to show cause was properly dismissed.
 

 Being of the opinion that plaintiffs rightly prevailed in the court below, we address our attention to defendant’s alternative plea for compensation for the value of the improvements placed upon the land as a possessor in good faith and also to his call in warranty against his vendor, Burnette. The trial judge dismissed these demands as premature, evidently being of the opinion
 
 [4]
 
 that,’ since the eviction of defendant was only partial, he being rec
 
 *299
 
 ognized as an owner of one-fourth of the land in indivisión with plaintiffs, it was impossible to accurately determine in this proceeding the amount to which plaintiff would be entitled and that the' parties should be relegated to an action for a partition by licitation followed by an accounting.
 

 The ruling of the judge is sound and is sustained by the jurisprudence of this court. Since plaintiffs are not entitled to full possession of the land but only in indivisión . with defendant, they obviously should not be required either to accept possession of the improvements erected by defendant jointly with him or be' forced to pay their proportionate value, when they are not to have the unrestricted use of them. Accordingly, the only fair way by which defendant can be reimbursed for the proportionate value of these improvements is by a partition of the property and a subsequent accounting.
 

 It was so held in LeBleu v. North American Land & Timber Co., 46 La.Ann. 1465, 16 So. 501. There, the defendant in a petitory action reconvened against the plaintiff, who was recognized with him as a joint owner of the property, for the price of certain improvements which he had placed thereon whilst in exclusive possession. On the trial, the district judge refused to admit testimony relative to the value of the improvements, remitting consideration of that, question to a future action between the parties.. On appeal, the judgment was affirmed, this court holding that the ascertainment of defendant’s right to reimbursement was necessarily consigned to an action of partition between the joint owners.
 

 In complaining of the ruling below,, counsel for defendant depends on Article 3453 of the LSA-Civil Code which recognizes the right of a possessor in good faith,, in case of eviction, to retain the thing “* * * until he is reimbursed the expenses he may have incurred on it.”
 

 It is, of course, fundamental that a good faith possessor is entitled to reimbursement for the expense he has incurred in improving the property but this does not mean that he must recover in the petitory action brought against him for the purpose of establishing a joint ownership of the land, particularly when the possessor is not wholly evicted and is recognized as an owner in indivisión, like in this case. In truth, we find it difficult to understand defendant’s insistence upon being compensated at this time when it should be manifest that it is well nigh impossible to correctly assess the amount to which he may be entitled.
 

 For the same reasons, it seems clear that the judge was right in refusing to give judgment in warranty against Burnette — for, until there is a partition and an accounting between plaintiffs and defendant, it is not feasible to ascertain the extent of the damage sustained. This was the
 

 
 *301
 
 ruling of the court in LeBleu v. North American Land & Timber Co., supra, and we see no good reason to deviate from that authority.
 

 Counsel for defendant, in arguing that judgment should be granted against the warrantor in this suit, relies in the main upon Article 2509 of the LSA-Civil Code and Article 385 -of the Code of Practice. Article 2509 of the LSA-Civil Code is not appropriate in cases of partial eviction; Articles 2511 and 2514 are the applicable provisions. However, there is nothing contained in these articles or in Article 385 of the Code of Practice which requires that the warrantor be cast in an action when the indemnity which may be due by him is not presently determinable. Defendant’s right to recover the amount of his damages has been reserved by the trial judge.
 

 For the foregoing reasons, the judgment appealed from is affirmed.
 

 [1]
 

 . One of them, Tommie Lee Bishop, is a minor represented herein by his natural tutrix, Mittie Bishop.
 

 [2]
 

 . Baird v. Atlas Oil Co., 146 La. 1091, 84 So. 366; Loranger v. Citizens’ Nat. Bank, 162 La. 1054, 111 So. 418; Dalbey v. Continental Supply Co., 165 La. 636, 115 So. 807; Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321 and Humphreys v. Royal, 215 La. 567, 41 So.2d 220.
 

 [3]
 

 . In fact, neither Burnette nor defendant saw fit to require a title examination, merely relying on a curbstone statement of tbe lawyer who had handled the succession of Angall Bishop Walton.
 

 [4]
 

 , The judge did not assign written reasons for judgment.