401 So.2d 465 (1981)
Mrs. Nina S. HARDAWAY, et al., Plaintiff-Appellee,
v.
Rodney R. MARTIN, et al., Defendants-Appellants.
No. 14541.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
*466 Campbell, Campbell & Johnson by John T. Campbell, Minden, for plaintiff-appellee.
Fish, Montgomery & Robinson by Roy M. Fish, Springhill, for defendants-appellants.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
From a judgment in favor of the curatrix of an interdict recognizing the interdict as the sole owner of a 60-acre tract of land, the defendants who claim an undivided 3/8 interest in the tract appealed.
On appeal, defendants allege the trial court erred in (1) failing to hold that the interdict was estopped from denying the defendants' ownership because of numerous declarations in various documents and judicial proceedings whereby the interdict claimed only a fractional interest in the land; (2) failing to hold defendants were entitled to rely on the law of registry; and (3) failing to dismiss the action because the undercurator did not join or concur in the bringing of the suit.
Finding that each issue was considered and correctly decided by the district court, we affirm.
The district court's written reasons for judgment concisely set forth the pertinent facts:
"This suit is brought by the curatrix of the interdict, Elbert Hudson, for a declaratory judgment asking that he be recognized as the owner of sixty acres in Webster Parish. The interdict's father, Henry Hudson, acquired the tract in question by deed dated November 23, 1900. That instrument did not give his marital status. Henry Hudson married Ever Bryant in 1902, and Elbert Hudson was the only child born to that marriage. Henry Hudson subsequently died, and his widow, Ever Bryant Hudson, contracted a second marriage to Phil Lindsey, to which marriage three children were born.
"In 1919 a tutorship was opened for the minor, Elbert Hudson, and his grandfather was appointed his tutor. The inventory in that tutorship indicated that Elbert Hudson owned a one-half interest in the property in question, along with an additional forty acres. Thereafter, approval was given in the tutorship for the leasing for oil and gas of a portion of the property, and for the sale of a small portion of the property. At all times in the tutorship the property was treated as having been a part of the community between Henry Hudson and Ever Bryant Hudson.
"In 1952 a petition for interdiction of Elbert Hudson was filed on the basis that he was deaf and dumb and unable to communicate by sign language or in any other fashion. A judgment of interdiction was subsequently rendered, and the inventory filed in the interdiction proceedings indicated that Elbert Hudson owned one-half interest in the property in question. Subsequently, in the interdiction proceedings oil and gas leases were executed in 1952, 1973 and again in 1979. In the 1952 and 1973 petitions to lease the property, it was indicated that Elbert Hudson owned a half interest in the property in question.
*467 "Ever Bryant Hudson died in 1958, and in 1959 one of her children, Florence Lindsey Hutchinson, opened her succession in Webster Parish and petitioned to have her four children placed in possession of her estate. These children were Elbert Hudson and the three children of the second marriage of Ever Bryant Hudson to Phil Lindsey. Again the inventory in that succession indicated that Ever Bryant Hudson owned an undivided one-half interest in the property in question. The affidavit of heirship in that succession indicated that the property was purchased during the marriage between Henry Hudson and Ever Bryant Hudson, but the date of their marriage was left blank. The ex parte judgment of possession in that succession recognized the four children as owners of one-fourth interest each in the one-half interest purported to have been owned by Ever Bryant Hudson.
"Subsequently, defendants, or their ancestors in title, acquired the purported one-eighth interest each from the three children of the second marriage of Ever Bryant Hudson Lindsey.
"The evidence shows that Elbert Hudson has lived on the property in question for most of the time since he was a small child. He first lived on the property with his grandfather, Jim Bryant, who was appointed his tutor. After Elbert Hudson was interdicted, his aunt, Lonie Grigsby, was appointed as his curatrix, and they lived on the property in question for many years. Since her death, Elbert Hudson has continued to live on the property most of the time, and still resided on the property at the trial of this suit. After the death of Lonie Grigsby, Mrs. Nina Hardaway was appointed curatrix for Elbert Hudson in the interdiction proceedings."
The property was acquired by Henry Hudson prior to his marriage and was his separate property. Upon Henry Hudson's death, the property was inherited in full ownership by his son, Elbert Hudson. Neither Elbert Hudson nor his legal representatives ever executed any instrument purporting to convey title to any interest in the property to Ever Bryant Hudson or her children by her second marriage. The property was not community property and Ever Bryant Hudson never owned an interest in the property, nor did her children acquire any interest in the property at her death. Defendants' claim to title is necessarily based solely on estoppel.
Defendants' estoppel argument must fail for several reasons. Mere silence and delay cannot cause a loss of title to property except by effect of the laws of prescription. Bishop v. Copeland, 222 La. 284, 62 So.2d 486 (1952); Dugas v. Powell, 207 La. 316, 21 So.2d 366 (1945); Long v. Chailan, 187 La. 507, 175 So. 42 (1937). Title to immovable property cannot be established by waiver or estoppel; one can never be divested of title except in the manner prescribed by law, such as by deed, inheritance, or prescription. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962). Although a minor or interdict may be bound by the duly authorized actions of his legal representatives, Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633 (1940), the representatives of the interdict in this case were never authorized to disclaim or part with title to any part of the interdict's interest in the land inherited by him from his father. Their treatment of the property as community property rather than as separate property of Henry Hudson, apparently through mistake of fact or law, cannot estop the interdict from asserting title to the full interest owned by him. Further, the evidence establishes that defendants did not have the title to the property examined and did not rely on the documents of record in purchasing the property; rather, they relied on general hearsay information as to who owned the land. The element of detrimental reliance, essential to any estoppel plea, is lacking.
The two cases cited by defendants in which pleas of estoppel were successfully asserted are distinguishable. Harper v. Learned, 199 La. 398, 6 So.2d 326 (1942), was a boundary action and did not involve title. In Jackson v. United Gas Public Service Co., supra, the parties pleading estoppel *468 were parties (vendees) to the acts (deeds) and relied on the representations of the vendors or their duly authorized legal representatives in purchasing property for a valuable consideration. Here, neither the defendants nor those from whom they purported to acquire title were parties who contracted with the interdict or his legal representatives in any of the acts or proceedings, none of which were deeds purporting to convey title, relied on as supporting the plea of estoppel.
Likewise, the registry argument is without merit. The law of registry is not applicable when ownership of immovable property has become vested in the claimant by mere operation of law. Bishop v. Copeland, supra.
Defendants' contention that the concurrence of the undercurator in the bringing of the suit by the curatrix was required was raised first in a motion and exception filed on the date of trial, long after defendants had answered. An objection to procedural capacity must be raised by dilatory exception, LSA-C.C.P. Art. 926, and is waived if not pleaded before answer. LSA-C.C.P. Art. 928. Further, a curatrix is charged with the duty of preserving and administering the interdict's property and of representing him in all civil matters. LSA-C.C.P. Arts. 4262, 4554. The undercurator's concurrence in a suit brought to protect the property interests of the interdict is not required. LSA-C.C.P. Art. 4271, relied on by defendants, requires the undercurator's concurrence only in matters which require court approval, and is inapplicable here.
The judgment of the district court is affirmed at the cost of defendantsappellants.
Affirmed.