COVINGTON, Chief Judge.
Defendant appeals the decision of the trial court in plaintiffs’ favor in this declaratory judgment action to recognize ownership of immovable property. The plaintiffs are the five children of Woodson Single-tary, who died intestate on August 3, 1981; the defendant is the widow of the decedent, his second wife. The controversy focuses on the validity of an oral sale from decedent’s brother to decedent of the property in question, and the effect of a later written and recorded sale of the same by decedent’s brother to the defendant.
I. Oral Sale of Immovable Property
It is undisputed that at some point in the mid-to late 1960’s, decedent’s brother and sister-in-law, Fontain and Lesie Singletary, sold 6.8 acres of land in St. Tammany Parish to Woodson Singletary for $100.00 per acre. The transaction was completely verbal. The price for the property was paid in installments, and Woodson Singletary, four of his children, and defendant moved onto the property to live in a trailer at some point not clear from the record. The trial judge found, and it is not disputed on appeal, that the oral sale took place before Woodson’s marriage to defendant on June 24, 1971. When Woodson died on August 3, 1981, the transaction had never been reduced to writing. On April 19, 1985, a written sale of the property from Fontain and Lesie Singletary to defendant Pearl Singletary was filed for record in the Clerk of Court’s office, after this suit was instituted by plaintiffs. It is defendant’s contention that the oral sale was never perfected under LSA-C.C. Art. 2275, the provision governing verbal sales of immovables, and that the later written, recorded sale from decedent’s brother and sister-in-law is a valid transfer of the property as against the plaintiffs and any others.
At the time of the events in question, two articles of the Civil Code governed the verbal sale of immovables. Article 2440 provided:
All sales of immovable property shall be made by authentic act or under private signature.
*384 Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.
Article 2275[1] provided as follows:
Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.
Defendant argues that although the two requirements given in Article 2275, namely, delivery and confession of the sale under oath by the vendor, did take place, the oral sale is nevertheless invalid because the confession by the vendor under oath took place after the vendee’s death and after the written sale to her was recorded. Because of this, she argues that the oral sale was not perfected at the time that the written sale to her was recorded in the parish records.
We disagree. To adopt the view suggested by defendant would be to hold confession under oath by the vendor to be a suspensive condition, rather than a specification of the only means of proof of such a transaction provided by the Civil Code, which expressly prohibits the introduction of parol evidence to prove such a sale. Such a view is inconsistent with many other aspects of Louisiana law regarding immovable property, such as the prohibition against conditional sales of immovables, and will not prevail here. Even the placement of Article 2275 in Section 2, with its heading “Of Testimonial Proof,” of Chapter 6, entitled “Of the Proof of Obligations and of that Payment,” argues against the view suggested by defendant. The oral sale to Woodson Singletary was perfected when delivery of the property occurred, at whatever point in time that event occurred.
It is especially helpful in this situation to analyze the nature of the nullity of an oral sale of immovable property. Under Article 2275, the sale is “made good” after the actual verbal agreement when delivery is made; as discussed above, proof of this ratification may be made by the vendor, under oath. Thus, the nullity must be a relative one which is cured by delivery, if the same may be proven, as was done in this instance. The trial judge found that the sale was confected at least by April, 1969, based on testimony and evidence offered by the decedent’s son, Allen Ray Singletary, and thus that the property was decedent’s separate property, rather than a part of the community between Woodson and defendant. We find no error in this determination.
II. Effect of Subsequent Written Sale and Recordation
Defendant argues that the public records doctrine should determine the outcome here. However, this assertion ignores a long, consistent line of jurisprudence to the effect that the law of registry is inapplicable where the ownership of or claim affecting immovable property has been acquired by inheritance and title has become vested by operation of law. See, Jackson v. D’Aubin, 338 So.2d 575 (La.1976), Bishop v. Copeland, 222 La. 284, 62 So.2d 486 (1953); Dugas v. Powell, 207 La. 316, 21 So.2d 366 (1945); Long v. Chailan, 187 La. 507, 175 So. 42 (1937); Knighten v. Ruffin, 255 So.2d 388 (La.App. 1st Cir. 1971), cert. denied, 260 La. 399, 256 So.2d 288, 442 (1972).
Thus, even were we to hold otherwise on the validity of the oral sale, defendant cannot prevail against the forced heirs to decedent’s separate property by virtue of the public records doctrine.
For these reasons we affirm at defendant-appellant’s cost the judgment of the trial court declaring plaintiffs to be the owners in indivisión of the following property in St. Tammany Parish: *385 6.80 acres of land in Section 18 Township 6 South, Range 14 East, more fully described as follows:
Beginning at the Section corner common to Sections 13-18-19-24 of the above Township and Range run North 3.90 chains to a stake set on the South side of State Highway #58 and the point of beginning; thence run North 9.76 chains to a stake; thence North 45 degrees East 5.21 chains to a stake; thence South 28 degrees 30 minutes 15.18 chains to a stake; thence West on the Section line between Sections 18 and 19 to where said Section line crosses the South side of State Highway # 58 to a stake; thence along the Southern side of said Highway in a Northwesterly direction to the point of beginning.
AFFIRMED.

. This article number was vacated and the substance of it re-enacted as Articles 1832 and 1834 by Acts 1984, No. 331, effective January 1, 1985.